# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McCarter*, 2011 IL App (1st) 092864

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON McCARTER, Defendant-Appellant. |
| District & No. | First District, Sixth Division <br> Docket No. 1–09–2864 |
| Filed | June 24, 2011 |
| Rehearing denied | July 26, 2011 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal, defendant's convictions for murder, aggravated kidnapping and concealment of a homicidal death were affirmed, but his convictions for armed robbery, aggravated kidnapping based on armed robbery and aggravated vehicular hijacking were reversed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04–CR–1788; the Hon. Frank Zelezinski, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded for further proceedings. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Jessica D. Fortier, and Jonathan Krieger, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary Needham, and William L. Toffenetti, Assitatant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.<br>Justice McBride concurred in the judgment and opinion.<br>Justice R.E. Gordon dissented, with opinion. |

## OPINION

¶ 1      Following a bench trial, Brandon McCarter was convicted of murder, aggravated kidnapping, armed robbery, aggravated vehicular hijacking, and concealment of homicidal death. The defendant challenges all five of his convictions, only two of which we find cannot stand. We reverse the defendant's conviction for armed robbery because we find no admissible evidence to establish that the victim was ever robbed. Because we reverse the armed robbery conviction, we vacated the judgment of conviction entered on count VIII for aggravated kidnapping, based on the commission of armed robbery. However, the defendant was found guilty of six counts of aggravated kidnapping, with the five remaining counts merged in count VIII. We remand to the circuit court to enter judgment on a good aggravated kidnapping count. We reverse the defendant's conviction for aggravated vehicular hijacking where no evidence was presented that the defendant ever deprived the victim of possession of his car.

¶ 2                          BACKGROUND

¶ 3      Defendant Brandon McCarter was charged in a 14-count indictment with murder (5 counts), armed robbery (1 count), aggravated vehicular hijacking (1 count), aggravated kidnapping (6 counts), and concealment of homicidal death (1 count). The charges arose after the body of Tyree Bias was discovered in a burning car in a wooded area in Chicago. The defendant was charged, along with his brother Jamie McCarter, with the murder of Bias. We affirmed Jamie McCarter's conviction following a separate jury trial. *People v. McCarter*, 385 Ill. App. 3d 919 (2008). The instant defendant was convicted of all charges following a bench trial. He received consecutive sentences on each of his convictions: 35 years for murder, 10 years for armed robbery, 10 years for aggravated vehicular hijacking, 10 years for

aggravated kidnapping, and 5 years for concealment of homicidal death. The following evidence material to this appeal was introduced at his trial.

¶ 4     Around 6 a.m. on July 8, 2003, Vanessa Jackson was in her car delivering newspapers near the intersection of 137th Street and Wentworth Avenue in Chicago. Ms. Jackson observed a dark car parked on a gravel road, blocking her way, causing her to drive around the car. She saw three men in the car, one man in each front seat and one man seated behind the driver. She later saw two men standing alongside the car. One man had a T-shirt pulled up over his head, and the other man was wearing a hooded sweatshirt. A few minutes later, Ms. Jackson saw the two men running across a field and, about 15 minutes after that, Ms. Jackson saw the men at a nearby pay phone. Ms. Jackson was unable to identify either of the men.

¶ 5     Around 6:30 a.m. on July 8, 2003, Officer Reilly responded to a call regarding a brush fire at 136th Street and Wentworth. Tire tracks led north into a wooded area where a black car was found crashed through a fence into the brush. The car and the surrounding brush had caught fire. The source of the fire was later determined to be the car itself. Tyree Bias's severely burnt body was found in the driver's seat.

¶ 6     Later that day, Sergeant Daniel Dempsey met with Bias's girlfriend Lakesha Johnson. Ms. Johnson admittedly lied to Sergeant Dempsey when she told him that Bias left her house between 7:30 and 8:00 a.m. that morning. After meeting with Ms. Johnson, Sergeant Dempsey learned that Bias had died of a gunshot wound to the back of the head. Sergeant Dempsey reexamined the scene and found a wad of burnt money in Bias's car.

¶ 7     On July 15, Ms. Johnson was brought into police custody and questioned about Bias's death. After being in custody for around 72 hours, Ms. Johnson gave both a written and videotaped statement to Assistant State's Attorney (ASA) Patrick Enright. In her written statement, Ms. Johnson told ASA Enright that Bias was a drug dealer. She explained that the defendant and Bias were rival drug dealers who were not getting along. Five days before Bias's murder, the defendant told Ms. Johnson that he was going to get her a car. The defendant said to Ms. Johnson, "that if things got bad with Tyree [Bias] when they were going to take what they needed, he was going to take care of business." Ms. Johnson explained in her written statement that she understood the defendant's statements to mean that the defendant was going to shoot Bias and take his money. On July 6, Ms. Johnson told the defendant that Bias was coming home from jail later that day. On July 7, the defendant said to Ms. Johnson, "it's almost time for you to get that car" and "it's going down tomorrow." Ms. Johnson explained that she understood these statements to mean that the defendant was going to rob and kill Bias.

¶ 8     In her written statement, Ms. Johnson also described what she saw the morning of July 8, 2003. Around 5:15 a.m., Bias left her home. About 10 minutes later, Ms. Johnson saw Bias pull back into her driveway. She then saw the defendant's brother, Ernest McCarter, park his car in front of her house. The defendant and a second brother, Jamie McCarter, got out of Ernest McCarter's car and approached Bias's car. Jamie McCarter was holding a handgun, and the defendant was holding what appeared to be a sawed-off shotgun. The

defendant and Jamie McCarter were both dressed in black, hooded sweatshirts. The defendant got into the passenger seat of Bias's car and Jamie McCarter sat behind Bias, pointing his gun at the back of Bias's head. Bias then backed out of the driveway and drove away.

¶ 9    Finally, Ms. Johnson recited, in her written statement, the contents of a conversation she had with the defendant and Jamie McCarter two days after the killing. Jamie McCarter said "did you see that bitch flinch when I shot him" and admitted that he shot Bias in the back of the head while Bias was in the car. Jamie McCarter also told Ms. Johnson that he and the defendant placed Bias's foot on the gas pedal, put the car in drive, ran to the park, and went to a pay phone. Jamie McCarter later altered his story. He told Ms. Johnson that they were standing outside of Bias's car when he shot Bias. Jamie McCarter also claimed to Ms. Johnson that he had taken $3,000 from Bias.

¶ 10    At trial, Ms. Johnson testified that she fabricated the story in her written statement because she was threatened by the police. She was repeatedly impeached by the State with the testimony she gave at Jamie McCarter's trial and with her prior statements to the police. Ms. Johnson's entire written statement that she gave to ASA Enright was admitted, without a defense objection, under section 115–10.1 of the Code of Criminal Procedure of 1963. 725 ILCS 5/115–10.1 (West 2008).

¶ 11    Gerard Jimerson was also questioned by the police and testified on behalf of the State. At trial, he acknowledged that after he spoke to an assistant State's Attorney, he was relocated and provided with a month's rent and security deposit. On the morning of Bias's death, Mr. Jimerson was awakened at his home on 127th Street by the defendant and Jamie McCarter. The defendant told Mr. Jimerson that he had thrown drugs and a gun away while running from the police and needed a ride home. Mr. Jimerson drove the defendant and Jamie McCarter home. Mr. Jimerson also testified that a couple of days later, the defendant and Jamie McCarter were both crying and told him that "the hanging come before the catching, and he is not about to do a hundred years in jail." The defendant also told Mr. Jimerson that before he got caught for murdering Bias, he would kill Mr. Jimerson and his family.

¶ 12    Ernest McCarter gave the police written and videotaped statements after being held in custody for several days. On cross-examination at the defendant's trial, Ernest McCarter testified that the police promised not to charge him with murder if he agreed to testify against the defendant and Jamie McCarter. On direct, Ernest McCarter testified that the defendant and Bias were members of rival gangs that were at war. Around 7:30 or 8 a.m. on the morning of Bias's murder, Mr. Jimerson, along with the defendant and Jamie McCarter, arrived at Ernest McCarter's house. Ernest McCarter testified that Jamie McCarter placed a .38-caliber handgun under his mattress. Later that day, the defendant told Ernest McCarter that he got a "trophy." Ernest McCarter explained that getting a "trophy" meant that someone from a rival gang had been killed. The defendant told Ernest McCarter that Bias was the trophy.

¶ 13    Ernest McCarter also testified that the defendant told him about the events surrounding

-4-

Bias's murder. The version testified to by Ernest McCarter, however, differed from the version contained in Ms. Johnson's written statement. The defendant told Ernest McCarter that he and Jamie McCarter flagged down Bias in his car. The defendant and Jamie McCarter convinced Bias to drive them around to look for drugs they lost and then Jamie McCarter shot Bias in the back of the head near a side street in Riverdale. The defendant and Jamie McCarter jumped out of the car, which sped forward and crashed through a fence. The defendant left his shirt in Bias's car, so the defendant jumped the fence to retrieve his shirt but set the shirt on fire instead. The defendant and Jamie McCarter ran to a pay phone to call Mr. Jimerson. They walked to Mr. Jimerson's house, who drove them home.

¶ 14    The defense did not present any witnesses. The trial judge found the defendant guilty on all charges. This appeal followed.

¶ 15                                                    ANALYSIS

¶ 16    The defendant raises six issues, challenging each of his five convictions and the admission of Ms. Johnson's prior inconsistent statement: (1) he was not proved guilty of murder beyond a reasonable doubt because the State's witnesses' testimonies were inconsistent and unreliable; (2) plain error was committed by the admission, as substantive evidence, of portions of Lakesha Johnson's prior inconsistent statement containing inadmissible hearsay and inadmissible lay witness opinions; (3) he was not proved guilty of armed robbery because the only evidence proving a robbery occurred was an inadmissible hearsay statement in Ms. Johnson's prior inconsistent statement; (4) he was not proved guilty of aggravated kidnapping because the asportation was incidental to the other crimes committed by the defendant; (5) he was not proved guilty of aggravated vehicular hijacking because no "taking" of the victim's car within the meaning of the statute occurred; and (6) concealment of homicidal death was not proved beyond a reasonable doubt because no real concealment occurred and the State failed to prove every allegation of the charge in the indictment. We address the issues in the order raised by the defendant.

¶ 17                                          1. Evidence of Murder

¶ 18    The defendant first contends that the failure of the State's witnesses to promptly come forward with information related to Bias's murder renders their testimony unworthy of belief. Each of the witnesses provided information to the police only after being arrested. The defendant specifically points out that Lakesha Johnson denied she knew anything about the murder when she was first questioned by police on the day Bias's body was discovered. A week passed before she gave her written statement incriminating the defendant to the police following her arrest. The defendant argues the surrounding circumstances make the evidence provided by each of the witnesses not credible, which provides grounds for reversal under *People v. Charleston*, 47 Ill. 2d 19 (1970).

¶ 19    The defendant also argues Ms. Johnson, Ernest McCarter, and Mr. Jimerson had motives, opportunities, and time to fabricate their testimony, all of which undermines the credibility of their testimony to the point that reasonable doubt remains. The defendant directs our

attention to *People v. Smith*, 185 Ill. 2d 532 (1999), for support on this point.

¶ 20 Finally, the defendant argues that unbelievable testimony was given by Ms. Johnson, Ernest McCarter and Mr. Jimerson because each witness was impeached numerous times and gave inconsistent and contradictory accounts of the events leading up to Bias's murder. The defendant points out that Ernest McCarter's testimony about where and how the defendant got into Bias's car differed from the account in Ms. Johnson's handwritten statement. The defendant argues that the inconsistencies in the evidence provided by the State's witnesses are irreconcilable, which compels reversal.

¶ 21 It is not the function of this court to retry the defendant. *People v. Tenney*, 205 Ill. 2d 411, 428 (2002). It falls within the province of the trier of fact to judge the credibility of witnesses, resolve conflicts in the evidence, and draw conclusions based on all the evidence. *People v. Titone*, 115 Ill. 2d 413, 422 (1986). A reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). On review of a guilty verdict, a reviewing court asks only if any rational trier of fact could have reached the same conclusion viewing the evidence in the light most favorable to the prosecution. *Id.* The findings and judgment will not be reversed unless the evidence is so improbable as to create reasonable doubt of the defendant's guilt. *Id.* A reviewing court must consider all of the evidence submitted at the original trial to resolve the question of the sufficiency of the evidence. *People v. Olivera*, 164 Ill. 2d 382, 393-94 (1995).

¶ 22 That one witness's testimony contradicts the testimony of other prosecution witnesses does not render each witness's testimony beyond belief. See *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). The trier of fact is free to accept or reject as much or as little of a witness's testimony as it pleases. *People v. Logan*, 352 Ill. App. 3d 73, 81 (2004); *People v. Goodar*, 243 Ill. App. 3d 353, 357 (1993) (affirming a conviction even though there were discrepancies between the accounts given by several witnesses). It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 23 A conviction, supported by a substantively admitted prior inconsistent statement, may be upheld even though a witness recants on the stand the prior inconsistent statement admissible under section 115–10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–10.1 (West 2008)). *People v. Craig*, 334 Ill. App. 3d 426, 439 (2002). "[T]here are no 'suspect categories' of properly admitted evidence that require a different standard of appellate review. [Citation.] *** In other words, when a defendant is convicted and then appeals, one standard of review applies to all evidence." *Id.* A properly admitted prior inconsistent statement under section 115–10.1 is, by virtue of its admissibility, reliable and voluntary. *People v. Morrow*, 303 Ill. App. 3d 671, 677 (1999). The trier of fact may consider a prior inconsistent statement introduced as substantive evidence under section 115–10.1 the same as direct testimony by that witness. The trier of fact is free to accord any weight to such properly admitted statements based on the same factors it considers in assessing direct testimony. *Id.* "Once a jury or trial court has chosen to return a guilty verdict based upon a prior inconsistent statement, a reviewing court not only is under no obligation to determine whether the declarant's testimony was 'substantially corroborated' or 'clear and convincing,'

-6-

but it may *not* engage in any such analysis." (Internal quotation marks omitted.) (Emphasis in original.) *Morrow*, 303 Ill. App. 3d at 677 (quoting *People v. Curtis*, 296 Ill. App. 3d 991, 999 (1998)).

¶ 24        *Charleston* and *Smith*, the cases the defendant places great reliance upon, are distinguishable from the facts here.

¶ 25        In *Charleston*, our supreme court reversed the defendant's conviction following a bench trial. *Charleston*, 47 Ill. 2d at 20. The defendant was convicted of armed robbery and attempted rape. An off-duty officer came upon the assault after he heard the victim's screams. *Id.* The assailant fled after the officer fired his gun, first as a warning, then at the fleeing assailant. *Id.* The victim gave a thorough description of the assailant to the responding police officers. The victim stated "she would know him if she saw him again." *Id.* at 21. The victim, however, failed to tell the officers "that she had gone to school with her assailant, knew him and his name, and that he was a friend of her husband." *Id.* The victim's explanation for her failure to give the responding officers the complete information she possessed was inconsistent with her subsequent conduct. The victim explained her behavior "in concealing the identity of her assailant for almost a week" by claiming a fear of the defendant. *Id.* at 22. " 'I was scared. I figures that if he were bold enough to grab me he knew me. He will get me again.' " *Id.* Yet, her fear of the defendant did not dissuade her from identifying the defendant in a lineup six days after the alleged assault. *Charleston*, 47 Ill. 2d at 22. The victim's denial that she had ever seen the defendant with her husband or had ever spoken with him was directly contradicted by the testimony of others. The defendant, his fiancée, and another defense witness testified they had shared drinks with the victim and her husband about three months before the alleged assault. *Id.* The defendant's alibi defense, supported by two witnesses, was not directly challenged. *Id.* Notably, the victim's husband did not testify. *Id.* The evidence in *Charleston* triggered the court's duty to set aside a conviction where reasonable doubt remains. " 'We attach great weight to the findings of the trier of fact, including his appraisal of the credibility of the witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of a defendant's guilt.' " *Charleston*, 47 Ill. 2d at 22 (quoting *People v. Reese*, 34 Ill. 2d 77, 80 (1966)). Based on the nature of the evidence presented in *Charleston*, we are unpersuaded that the supreme court's decision in that case, apart from the general statement regarding when a conviction may be set aside, provides any guidance in the case before us.

¶ 26        In *Smith*, our supreme court reversed a jury's guilty verdict. *Smith*, 185 Ill. 2d at 534. The State's case in *Smith* hinged upon a single witness, who provided the only direct evidence linking the defendant to the crime. *Id.* at 542. Importantly, the crucial witness contended that the shooting, which resulted in the victim's death, occurred when the defendant and the victim were alone together. *Id.* However, at least three other witnesses testified that the defendant was always with them up to and including the time of the shooting. *Id.* at 543. There were also numerous other reasons to question the witness's credibility, including her out-of-court admission, which she denied on the stand, that she used drugs every day. *Id.* at 544. The witness also "did not tell the police that she had witnessed the shooting until two

days later, when she found her sister at the 51st Street police station under suspicion of involvement with the murder." *Id.* Finally, the boyfriend of her sister was an "alternative suspect" in the murder. *Id.* Ultimately, the court concluded that "given the serious inconsistencies in, and the repeated impeachment of, [the witness's] testimony, we find that no reasonable trier of fact could have found her testimony credible." *Id.* at 545. The court noted: "[T]he circumstantial evidence tending to link defendant to the murder merely narrowed the class of individuals who may have killed the victim, without pointing specifically to defendant." *Id.* Once again, we find the nature of the evidence presented in *Smith* to be dissimilar to the evidence in the case before us.

¶ 27    Here, Ms. Johnson's written statement alone provided substantial incriminating evidence that the defendant was involved in the murder of Bias. See *People v. Thomas*, 354 Ill. App. 3d 868, 878-79 (2004). In addition to Ms. Johnson's written statement, Mr. Jimerson and Ernest McCarter implicated the defendant. Ms. Jackson's testimony, which the defendant does not challenge, largely corroborated, at least circumstantially, the accounts provided by Ms. Johnson and Ernest McCarter that the defendant, while armed with a weapon, forcibly entered Bias's car and drove off. Unlike *Charleston* and *Smith*, this case did not turn on a single witness presented by the prosecution. Unlike *Smith*, the direct and circumstantial evidence beginning with the events at Bias's home pointed specifically to the defendant in the murder of the victim. See *People v. Hall*, 194 Ill. 2d 305, 333 (2000).

¶ 28    Nor is this a case in which the conflicts in the testimony were so numerous, confusing, and contradictory as to raise reasonable doubt of the defendant's guilt. See *People v. Hister*, 60 Ill. 2d 567, 571 (1975) (the testimony of each of the two eyewitnesses were so remarkably different that it was "obvious that one or both of the witnesses was grossly mistaken or untruthful" and the record was so "replete with other instances of inconsistent testimony relating *** the description [of the co-defendants], the number of persons with them, the type of automobile they were driving, who was armed and with what type of weapon, what other witnesses were present *** the sequence and location of the events leading up to the shooting, and the number of shots fired"). Nor do we find the testimony of the State's witnesses so contradictory that such evidence falls to the level of palpable improbability and incredulity. See *People v. Lindsey*, 73 Ill. App. 3d 436, 447 (1979) (where a key witness's mental history was erroneously kept from the jury and the physical evidence contradicted the witness's claim that two girls were raped (later found to be virgins), that a stabbing occurred (unsupported by evidence), that a strangulation by rope occurred (for which there was no evidence), and there was no signs of a claimed aggravated assault, left the reviewing court "with grave and substantial doubt of guilt").

¶ 29    Rather, the facts in this case are most similar to those in *People v. Logan*, 352 Ill. App. 3d 73 (2004). In *Logan*, the defendant was convicted of murder for shooting two men by a pay phone, fatally wounding one. *Id.* at 74-75. The State's primary witness, after first telling several different stories, provided the police with a written statement detailing her presence with the defendant when he committed the murder. *Id.* at 74-76. There was also corroborating evidence linking the defendant to the car driven by the assailant. *Id.* at 78. At trial, the State's primary witness recanted her prior written statement and grand jury

testimony, which were substantively admitted into evidence under section 115–10.1. *Id.* at 79. Although the murder victim's companion testified he was " 'positive' " the defendant was not the person that shot him and the victim, he was not sure he could identify the shooter if he saw him again. *Id.* at 78-80. The defendant was convicted of murder, and the appellate court affirmed. *Id.* at 81. "[T]he jury obviously found [the State's primary witness's] pretrial statement and grand jury testimony implicating defendant more credible than her trial testimony, and we will not substitute our judgment therefor." *Id.* at 80. The court concluded that the witness's prior statements, admitted under section 115–10.1, were alone sufficient to sustain the guilty verdict. *Id.* In addition, corroborating evidence supported the conviction. *Id.* That one shooting victim testified he was "positive" the defendant was not the shooter did not compel reversal. "It is for the trier of fact to resolve any inconsistencies in the testimony, and the trier of fact is free to accept or reject as much or as little as it pleases of a witness's testimony." *Id.* at 80-81.

¶ 30    Like *Logan*, the trier of fact here obviously found Ms. Johnson's prior statement more credible than her trial testimony. In explaining its verdict, the trial court stated:

> "Right now [Ms. Johnson] doesn't want to get involved for the most part, denies everything, and certainly is impeached, *but looking at her memorialized testimony of how she lays the facts \*\*\* in the detail that she provided it* in light of the detail of the unbiased witnesses, and it's the Court's position that the pieces of the puzzle all fit together." (Emphasis added.)

The trial judge was free to ignore Ms. Johnson's testimony at trial in favor of her prior inconsistent statement, introduced as substantive evidence, that incriminated the defendant in Bias's murder. See *People v. McCarter*, 385 Ill. App. 3d 919, 936 (2008) (*Jamie McCarter* decision) (Ms. Johnson's statement that she saw the defendant and Jamie McCarter "holding Bias at gunpoint and entering his car within an hour of when the murder" occurred, along with testimony from other witnesses, supported the jury's verdict of guilty of murder).

¶ 31    While the defendant correctly points out that Ms. Johnson's memorialized statement describing the defendant and Jamie McCarter's initial encounter with Bias differs from the testimony of Ernest McCarter, this does not mean the trier of fact had to throw his hands in the air on whom to believe. Once again, the trier of fact was free to place the greatest importance on the testimony, shared by Ernest McCarter and Ms. Johnson, that the defendant encountered Bias at Bias's home. *Logan*, 352 Ill. App. 3d at 80-81; *People v. Williams*, 256 Ill. App. 3d 370, 373 (1993) (affirming defendant's conviction after trial court explicitly stated that it believed the testimony of one officer over the conflicting testimony of another officer); *People v. Hoffman*, 45 Ill. 2d 221, 226 (1970) (rejecting the defendant's argument that the defendant was not proven guilty beyond a reasonable doubt in light of testimony of defense witnesses that contradicted the arresting officers' testimony). Certainly, if the trial court accepted only the evidence from Ms. Johnson's written prior inconsistent statement that was consistent with Ernest McCarter's testimony, such evidence supported the defendant's conviction. *McCarter*, 385 Ill. App. 3d at 936.

¶ 32    In sum, there is little in the defendant's challenges to the testimony of all three

prosecution witnesses that compels us to question the guilty finding by the trier of fact. Taking all of the evidence in the light most favorable to the prosecution, we cannot say that no rational trier of fact could have found credible portions of the testimony of the three prosecution witnesses, consistent with the other incriminating evidence, such that the essential elements of murder were proved beyond a reasonable doubt. The evidence was more than sufficient to support the defendant's murder conviction.

¶ 33                    2. Admissibility of Prior Inconsistent Statement

¶ 34    The defendant contends that portions of Lakesha Johnson's handwritten statement were inadmissible hearsay. Although the defendant's counsel raised this issue in his posttrial motion, in order to preserve an issue for appeal, a defendant must also object at trial. Omission of either step results in forfeiture. *People v. Woods*, 214 Ill. 2d 455, 470 (2005). The defendant forfeited the issue here by failing to object at trial. The defendant argues, however, that the error is subject to review under the plain error doctrine and his claim of ineffective assistance of counsel.

¶ 35    The plain error rule is intended as a means of meliorating the harshness of the strict application of the forfeiture rule. *People v. Howell*, 60 Ill. 2d 117, 120-21 (1975). The plain error doctrine permits a reviewing court to address an unpreserved error when (1) the evidence is so closely balanced that a clear and obvious error alone threatened to tip the scales of justice against the defendant, or (2) an error so serious occurred that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178-79, 186-87 (2005).

¶ 36    To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate (1) counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in counsel's performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504 (1984).

¶ 37    The claims of plain error and ineffective assistance of counsel to obtain review of unpreserved trial errors overlap. If the defendant is able to establish that trial counsel rendered constitutionally deficient representation, then he has proved plain error under the second prong as well. The second prong of the plain error rule is triggered "if a defendant can successfully prove ineffective assistance of counsel [because] this is considered a substantial impairment of fundamental rights *** [under] the *Herron* test." *McCarter*, 385 Ill. App. 3d at 928.

¶ 38    The defendant argues that plain error was committed when Jamie McCarter's statements and Ms. Johnson's opinions were admitted at trial through Ms. Johnson's written statement, which she disavowed at trial. The defendant claims that Jamie McCarter's statements, within Ms. Johnson's prior inconsistent statement, were inadmissible because they did not fall under the co-conspirator exception to the hearsay rule and violated the defendant's right to confrontation. The defendant contends that the issue should be reviewed as plain error under the "closely balanced" prong because the "evidence against Brandon was not overwhelming" and under the fundamental fairness standard, which we take as a means of invoking the

-10-

second prong of plain error.

¶ 39    At the outset, we reject the defendant's contention that his claim that the evidence cannot be said to be "overwhelming" is sufficient to trigger review of the defendant's claim under the first prong of the plain error rule. See *People v. Santiago*, 409 Ill. App. 3d 927, 930 n.1 (2011) (plain error claim is forfeited when the defendant does not "argue[ ] that the evidence was *closely balanced*" (emphasis in original) (internal quotation marks omitted)); *People v. Carrero*, 345 Ill. App. 3d 1, 12 n.3 (2003) ("There is a real question whether the defendant's claim that the evidence against him was 'not overwhelming' is equivalent to the 'factually close' standard" under prong one of plain error.). Following the decision in Jamie McCarter's appeal, we review the claim of plain error regarding the admission of Ms. Johnson's prior inconsistent statement only under his claim of ineffective assistance of counsel, which, if proved, establishes plain error under the second prong. *McCarter*, 385 Ill. App. 3d at 928.

¶ 40                              a. Personal Knowledge Requirement

¶ 41    Although not addressed by the defendant, whether error occurred in the admission of the handwritten statement turns on its admissibility under section 115–10.1. 725 ILCS 5/115–10.1 (West 2008). Section 115–10.1 allows a prior inconsistent statement of a witness to be admitted as substantive evidence if it "narrates, describes, or explains an event or condition of which the witness had *personal knowledge*." (Emphasis added.) 725 ILCS 5/115–10.1(c)(2) (West 2008). Of course, a written statement in narrative form may contain both statements that satisfy section 115–10.1 and statements that do not. *McCarter*, 385 Ill. App. 3d at 930-31. Examples of the latter are statements of secondhand accounts of events, which remain inadmissible hearsay. *McCarter*, 385 Ill. App. 3d at 931.

¶ 42    In the appeal from Jamie McCarter's conviction, Justice Joseph Gordon of this court provided a primer on examining the admissibility of prior inconsistent statements in narrative form. *McCarter*, 385 Ill. App. 3d at 931. The *Jamie McCarter* decision also provides us with a resolution of the claim by the instant defendant because the *Jamie McCarter* decision addressed the very same handwritten statement of Latasha Johnson at issue before us. We adopt the ruling in Justice Joseph Gordon's decision, which we quote at length.

>        "[W]e find that [Ms.] Johnson had personal knowledge of the events she purportedly witnessed at her house–in particular, defendant and his brother leading Bias away at gunpoint in his own car on the morning of Bias's death–but she did not have personal knowledge regarding the murder of Bias. Since she allegedly saw with her own eyes the scene where Bias was led away, her prior inconsistent statements regarding that scene are admissible as substantive evidence. See 725 ILCS 5/115–10.1 (West 2006). By contrast, her account of the things she heard [Jamie McCarter] saying about the murder is highly analogous to the substantively inadmissible statements in *Morgason* and *Cooper*: as there is no evidence linking [Ms.] Johnson to the actual scene of the murder, she could not have personal knowledge of the events [Jamie McCarter] described and was purportedly bragging about." *McCarter*, 385 Ill. App. 3d at 931 (citing *People v. Morgason*, 311 Ill. App. 3d 1005, 1011 (2000), and *People v.*

*Cooper*, 188 Ill. App. 3d 971, 973 (1989)).

¶ 43 Consistent with the holding in the *Jamie McCarter* decision, the portions of Ms. Johnson's handwritten statement that were not based on her personal knowledge remained inadmissible hearsay and, consequently, inadmissible under of section 115–10.1, "and the court erred in allowing their introduction." *McCarter*, 385 Ill. App. 3d at 932. In particular, her statements, attributed to Jamie McCarter, about shooting Bias, putting Bias's foot on the gas pedal, and then running to a pay phone were inadmissible hearsay. Most important for the armed robbery conviction, which we address below, Ms. Johnson's statement that Jamie McCarter said he "retrieved $3,000 from Tyree [Bias]" is also inadmissible hearsay as the statement was not based on Ms. Johnson's personal knowledge. *Id.* at 931.

¶ 44                                   b. Lay Opinion Testimony

¶ 45 The defendant also argues that the opinion testimony of Ms. Johnson regarding her interpretations of the defendant's statements made directly to her should not have been admitted at trial. This too was resolved by our colleagues in the *Jamie McCarter* decision. *McCarter*, 385 Ill. App. 3d at 934. This court held that the instant defendant's statement that " 'it's going down,' " a statement he purportedly made to Ms. Johnson, which she took to mean that the brothers planned to rob and kill Bias, was inadmissible opinion testimony. *McCarter*, 385 Ill. App. 3d at 934. We again adopt the ruling of this court in the *Jamie McCarter* decision. "We find that the complained-of statements in the instant case, as with the statements in *Brown*, go beyond the realm of mere observation, crossing the line into impermissible opinion testimony by lay witnesses." *McCarter*, 385 Ill. App. 3d at 934 (citing *People v. Brown*, 200 Ill. App. 3d 566 (1990)).

¶ 46 There is no question that it was error to admit certain portions of Ms. Johnson's prior inconsistent statement that was admitted in narrative form. The State admits as much: the evidence complained of was "also erroneously admitted" in the trial of Jamie McCarter. But consistent with our ruling in the *Jamie McCarter* decision, the State argues the defendant was not prejudiced by the improper consideration of the evidence under a second-prong plain error review or for purposes of the second prong of his ineffective assistance claim. *McCarter*, 385 Ill. App. 3d at 936.

¶ 47 We understand the defendant to claim second-prong plain error as to his armed robbery conviction only, which we address next.

¶ 48                                   3. Evidence of Armed Robbery

¶ 49 Proof of a criminal offense involves proof of two distinct propositions or facts beyond a reasonable doubt: *corpus delicti* and the identity of the guilty party. *People v. Lambert*, 104 Ill. 2d 375, 378 (1984). Proof of *corpus delicti* requires both proof of injury or loss and proof of criminal agency. *Id. Corpus delicti* cannot be proved by the defendant's confession alone. *Id.* When the defendant's confession is relied upon to prove the offense, independent or corroborating evidence must be present. *Id.* at 379.

¶ 50    The defendant argues that the State failed to prove the *corpus delicti* of the armed robbery as charged in the indictment, that is, the defendant took United States currency from Bias. According to the defendant, the only evidence that Bias was the victim of a robbery was Jamie McCarter's statement in Ms. Johnson's written statement that the circuit court erred in admitting substantively under section 115–10.1, as we concluded in the previous section. In her written statement, Ms. Johnson attributed to Jamie McCarter the claim that "he searched [Bias's] pockets and retrieved $3,000," which we found inadmissible because it was not based on Ms. Johnson's personal knowledge. *Supra* ¶ 42.

¶ 51    The State argues proof that a robbery occurred was established by other properly admitted evidence: the defendant's statements " 'it's going down' " and he was going to " 'take care of business,' " together with Ms. Johnson's testimony that Bias always had money on him and "the facts of the crime as known by the remaining evidence."

¶ 52    Consistent with the *Jamie McCarter* decision, we found Ms. Johnson's testimony interpreting statements attributed to the defendant to be improper opinion evidence. *Supra* ¶ 44-45. The reason to exclude this evidence was made clear in the *Jamie McCarter* decision. When a witness merely narrates a third-party statement about which the witness has no personal knowledge, cross-examination gives the trier of fact no insight into the truth of that statement, which makes it difficult for the trier of fact to assess its reliability. *McCarter*, 385 Ill. App. 3d at 931. The defendant's statements, relied upon by the State, provide no evidence of robbery. Nor did Ms. Johnson's testimony that Bias always had money on him tend to prove a robbery occurred as money was recovered by the police from Bias's body. That leaves only proof of robbery "as known by the remaining evidence" to support the conviction. The only remaining evidence supporting an armed robbery conviction in the record is the statement attributed to Jamie McCarter in Ms. Johnson's written statement that he took $3,000 from Bias before he was killed.

¶ 53    The testimony admitted in this case is unlike that admitted in *People v. Collins*, 106 Ill. 2d 237, 262 (1985), where our supreme court affirmed armed robbery convictions against a claim that the only evidence to support the convictions was hearsay testimony. In *Collins*, hearsay was admitted through a witness that gave testimony before the jury. The jury was instructed that this witness's testimony should be viewed with suspicion and the jury "was fully cognizant of the infirmities" in his testimony. *Id.* The witness, an accomplice, also testified that "he went along with the others for a 'piece of the action' " and that he received $125 from one of the defendants. *Id.* The claimed hearsay concerned a third codefendant, who was tried separately, and claimed to have said to the witness "that $1,800 had been taken from the victims." *Id.* The court noted that this "hearsay was elicited by the defendants during [the witness's] cross-examination. [Citation.]" *Id.* at 263. "Under the circumstances, [the witness's] testimony was properly considered by the jury and taken together with his *other statements* was sufficient to establish that the defendants had committed armed robbery." (Emphasis added.) *Id.* at 263-64.

¶ 54    Here, Ms. Johnson's written statement that Jamie McCarter claimed to take $3,000 from Bias was erroneously introduced under section 115–10.1 because Ms. Johnson did not have personal knowledge of Jamie's statement. That statement amounted to the only evidence that

-13-

a robbery took place. Unlike the testimony of the witness in *Collins* that he received $125 from part of the action, nothing in Ms. Johnson's testimony, apart from the claim she attributed to Jamie McCarter, tended to prove that any money was taken from Bias. We note Sergeant Dempsey testified that he found a "wad of burnt up money" in Bias's car, which tended to show that money was not taken from Bias. Also, neither Ernest McCarter nor Mr. Jimerson gave testimony that Bias was robbed by the defendant (or Jamie McCarter), though the two State witnesses testified to being told details of the shooting by the defendant on the day of Bias's murder. We find nothing in record to support the State's contention that the "remaining evidence" established the crime of armed robbery.

¶ 55    The defendant's conviction of armed robbery makes this case different from the *Jamie McCarter* decision because Jamie McCarter was convicted only of first degree murder. *McCarter*, 385 Ill. App. 3d at 920. It appears the four additional offenses, including armed robbery, faced by the instant defendant, were never prosecuted against Jamie McCarter.

¶ 56    Consistent with the holding in the *Jamie McCarter* decision, defense counsel here rendered deficient representation by failing to object to the portions of Ms. Johnson's prior inconsistent statement that were not based on her personal knowledge. The professional error of defense counsel prejudiced the defendant because the inadmissible hearsay in Ms. Johnson's statement provided the only evidence of a robbery. Without that statement, there was no evidence that the defendant, or one he was accountable for, took money from Bias as alleged in the indictment. Hence, we have little doubt that " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Albanese*, 104 Ill. 2d 504, 525 (1984) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 57    Because the defendant successfully proved ineffective assistance of counsel, in doing so he satisfied the second prong of the plain error rule. *McCarter*, 385 Ill. App. 3d at 928. Based on plain error, we exercise our duty to set aside the armed robbery conviction where reasonable doubt remains of the defendant's guilt. See *Charleston*, 47 Ill. 2d at 22.


¶ 58                        4. Evidence of Aggravated Kidnapping

¶ 59    Next, the defendant argues his aggravated kidnapping conviction should be reversed because the asportation of Bias was incidental to his murder. The defendant contends the detention of Bias lasted only long enough to commit the murder, which he contends makes clear the defendant had no criminal intent to commit kidnapping.

¶ 60    The defendant asserts this claim should be reviewed *de novo* because the facts are not in dispute. *People v. Smith*, 191 Ill. 2d 408, 411 (2000). However, when a defendant challenges incriminating inferences that may have been drawn by the trier of fact from the evidence, the challenge constitutes a claim against the sufficiency of the evidence. *People v. Stewart*, 406 Ill. App. 3d 518, 525 (2010). Because the defendant's challenge is directed at the quantum of evidence presented against him, the correct standard of review is that which applies to the sufficiency of the evidence challenge: whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of aggravated kidnapping, taking the evidence

-14-

in the light most favorable to the prosecution. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009) (reviewing whether an asportation was merely incidental to another offense or whether it rose to the level of an independent crime of kidnapping); *People v. Wilder*, 356 Ill. App. 3d 712, 722 (2005) (same); *People v. Jackson*, 281 Ill. App. 3d 759, 768 (1996) (same); *People v. Lamkey*, 240 Ill. App. 3d 435, 438 (1992) (same).

¶ 61 Kidnapping is elevated to aggravated kidnapping when an aggravating circumstance under the statute is proved. See 720 ILCS 5/10–2(a) (West 2008). A person commits the offense of kidnapping when he knowingly, by force or threat of imminent force, carries another from one place to another with intent secretly to confine that other person against his will. 720 ILCS 5/10–1 (West 2010). The instant defendant was convicted of six counts of aggravated kidnapping, but sentence was imposed only on count VIII, which charged aggravated kidnapping based on the commission of the felony of armed robbery. See 720 ILCS 5/10–2(a)(3) (West 2010).

¶ 62 Generally speaking, an aggravated kidnapping conviction cannot stand when "the asportation or confinement of the victim was merely incidental to another crime." *People v. Eyler*, 133 Ill. 2d 173, 199 (1989). The defendant contends that this court's decision in *People v. Smith*, 91 Ill. App. 3d 523, 529 (1980), should guide our analysis regarding his contention that kidnapping was incidental to murder. In *Smith*, we adopted four factors suggested by a federal court of appeals as an approach to determine whether a separate offense of kidnapping should lie. *Smith*, 91 Ill. App. 3d at 529 (citing *Government of the Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)). We summarize the four factors: (1) the duration in terms of time and distance of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *Smith*, 91 Ill. App. 3d at 529.

¶ 63 Under the first factor of time and distance, an asportation of 1 1/2 blocks has been held sufficient to support a separate kidnapping charge (*People v. Casiano*, 212 Ill. App. 3d 680, 687-88 (1991)), as has an asportation lasting only a few minutes (*People v. Siguenza-Brito*, 235 Ill. 2d 213, 226-27 (2009) (asportation lasted four to five minutes)). Here, the defendant and Jamie McCarter, armed with weapons, approached Bias in his driveway and drove away in Bias's car around 5:25 a.m. Bias was next observed in an isolated area some 35 minutes later still behind the steering wheel. The duration and distance of the asportation in this case exceeded that in *Casiano* and *Siguenza-Brito*, so the first factor does not favor a claim that kidnapping was incidental to murder.

¶ 64 The second factor looks to the nature of the separate offense. *Smith*, 91 Ill. App. 3d at 529. Generally, when the asportation occurs prior to the commission of the separate offense, a kidnapping charge will lie. See *Siguenza-Brito*, 235 Ill. 2d at 226-27; *Casiano*, 212 Ill. App. 3d at 688; *Jackson*, 281 Ill. App. 3d at 769; *People v. Cole*, 172 Ill. 2d 85, 104-05 (1996). Here, a fair inference is that Bias was detained for about 35 minutes before he was murdered. There is no evidence that the defendant did anything to Bias during those 35 minutes other than hold him at gunpoint. Given the nature of Bias's killing, a shot to the back

-15-

of the head by the rear-seat passenger, it seems clear that the purpose of transporting Bias away from his home was to kill him. The nature of the killing does not favor treating the offense of kidnapping as merely incidental to murder. See *Cole*, 172 Ill. 2d at 104-05 (aggravated kidnapping charge proper where the defendant drove the victim to an isolated area before shooting and killing him); *Jackson*, 281 Ill. App. 3d at 768-69 (aggravated kidnapping conviction affirmed where the defendant transported the victim a distance of several blocks to an abandoned bridge to commit the murder).

¶ 65    The cases cited by the defendant do not aid his claim to the contrary. In *Lamkey*, 240 Ill. App. 3d at 440, the defendant jumped out of a doorway, grabbed the victim, pulled her into a hallway, and sexually molested her. *Id.* at 436-37. The detention of the victim lasted two minutes; apparently only long enough to commit the sexual assault. *Id.* at 437. Here, Bias was transported some distance from his home and held in his car approximately 17 times longer than the detention lasted in *Lamkey*. In *Smith*, the defendants approached the victim while he was in his car and forced their way into the car. *Smith*, 91 Ill. App. 3d at 525. The defendants then drove the victim around for approximately 20 minutes, during which time the defendants took the victim's money, his wallet, and finally his car. *Id.* at 525. The court held "the gist of the case" was robbery and determined the kidnapping was merely incidental to the robbery because the defendants used the 20 minutes to take control of the victim's personal property and car, after which the defendant immediately released the victim. *Id.* at 529. Here, the defendant held Bias at gunpoint for approximately 35 minutes before killing Bias. We are unpersuaded that the defendant should be found not culpable for kidnapping simply because the defendant waited to commit the murder until the car was driven to an isolated area.

¶ 66    The third factor has no application under the facts of this case as no credible claim can be made that asportation is "inherent" in the murder committed by the defendant. *Jackson*, 281 Ill. App. 3d at 769 (noting that forced movement of a victim from one location to another is not inherent in the offense of murder).

¶ 67    Finally, the fourth factor provides no support to the defendant because the asportation of Bias to an isolated area heightened the danger to the victim. *Smith*, 91 Ill. App. 3d at 529. We reject out-of-hand the defendant's argument that the asportation did not create a significant danger to Bias because the "danger of murder is the same–death–regardless of where it occurs." See *Jackson*, 281 Ill. App. 3d at 769 (finding dangers independent of those posed by murder by the taking of the victim from a public place to an abandoned bridge). This case is similar to *Cole*, 172 Ill. 2d at 104-05 (aggravated kidnapping charge proper where the defendant drove the victim to an isolated area before shooting and killing him). There, the defendant was convicted of murder and aggravated kidnapping. *Id*. at 91. The *Cole* defendant ordered the victim and another person to get into a car. *Id.* at 104-05. After driving to an isolated area, the defendant shot and killed the victim. The court held sufficient evidence existed in the record to support the trial judge's finding that the defendant's actions supported an aggravated kidnapping conviction; the confinement of the victim in the car was not merely incidental to the murder. *Id.* at 104.

¶ 68    The evidence here was more than sufficient to find the asportation of Bias was not

incidental to his murder by the defendant. The defendant was properly found guilty of aggravated kidnapping.

¶ 69 Nonetheless, because the sentence was imposed on the aggravated kidnapping count alleging the commission of the felony of armed robbery, which was not proved (*supra* ¶ 47-56), we remand to the circuit court to enter sentence on one of the other aggravated kidnapping counts. *People v. Dixon*, 91 Ill. 2d 346, 353 (1982) (cause remanded for sentencing where the trial judge wrongly concluded that convictions "merged into the other *** offenses upon which he did impose sentence"); see *People v. Robinson*, 267 Ill. App. 3d 900, 907 (1994) ("The proper remedy for a failure to enter judgment is to remand to the circuit court for entry of judgment."). The conviction of aggravated kidnapping is affirmed.

¶ 70                              5. Evidence of Aggravated Vehicular Hijacking

¶ 71 The defendant next argues the State failed to establish that the defendant took Bias's car within the meaning of the vehicular hijacking statute. "A person commits vehicular hijacking when he or she *takes* a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." (Emphasis added.) 720 ILCS 5/18–3(a) (West 2008).

¶ 72 The defendant contends that in order to "take" a motor car from another, a defendant must physically remove the owner from the car or dispossess the owner of the car from his car. The State argues that the defendant took Bias's car within the meaning of the statute by "taking control over the victim's car in his presence." Thus, the question before us does not concern the sufficiency of the evidence; rather, the question is whether the facts as established by the State's evidence are legally sufficient to make out the offense of aggravated vehicular hijacking. This presents a question of statutory construction, which we review *de novo*. *People v. Smith*, 191 Ill. 2d 408, 411 (2000); *People v. Lewis*, 234 Ill. 2d 32, 44 (2009).

¶ 73 To support his contention that aggravated vehicular hijacking has not been proved under the facts of this case, the defendant directs our attention to *People v. Cooksey*, 309 Ill. App. 3d 839 (1999), where the defendant took the keys to the victim's car, ran 25 feet to the car, and drove off. The question before this court concerned "the interpretation of the term the 'immediate presence.' " *Id*. at 847. In *Cooksey*, we noted the "intent of the legislature was to create a new offense when someone forcibly removes someone from his or her car or otherwise forcibly dispossesses someone of his or her car." *Id.* at 848. The precise question of whether the defendant "took" the victim's car within the terms of the offense of vehicular hijacking was not addressed.

¶ 74 We have found no published decision that answers whether "takes" in the vehicular hijacking statute encompasses a situation where the defendant forces the victim to drive his own car to another location. We look to the use of that term in other sections of the Criminal Code to determine its scope. "Where a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed." *People v. Maggette*, 195 Ill. 2d 336, 349

(2001); see *People v. Aguilar*, 286 Ill. App. 3d 493, 497-98 (1997) (using cases interpreting the robbery statute to determine the meaning of the phrase "by the use of force or by threatening the imminent use of force" used in the vehicular hijacking statute (emphasis omitted) (internal quotation marks omitted.)).

¶ 75    The term "takes" is used in the Criminal Code to describe the offense of robbery. 720 ILCS 5/18–1(a) (West 2008) ("[a] person commits robbery when he *** takes property"). Neither the State nor the defendant claims that the term "takes" has a different meaning in the vehicular hijacking statute than in the robbery statute; nor does either suggest that the legislature intended contrary meanings for the same term.

¶ 76    In *People v. Strickland*, 154 Ill. 2d 489, 525 (1992), the supreme court reversed the defendant's conviction for armed robbery, holding that the "taking" element of the offense was not proved. In that case, the defendant and his brother approached a car occupied by a man with his two young relatives. *Id.* at 499. The defendant and his brother ordered the man at gunpoint to drive them to California. *Id.* The defendant and his brother got into the backseat of the car, with the young relatives occupying the front seat with the driver. *Id.* The victim then drove the car from a far suburb into downtown Chicago. *Id.* At a downtown intersection, the victim saw a police car, "stopped his own vehicle in front of the squad car and got out to alert the officer." *Id.* at 500. The defendant and his brother ran off on foot. *Id.*

¶ 77    The court began its analysis on whether the armed robbery conviction could stand with the proposition that the offense of robbery "is complete when force or threat of force causes the victim to part with possession or custody of property against his will." (Internal quotation marks omitted.) *Strickland*, 154 Ill. 2d at 525-26 (quoting *People v. Smith*, 78 Ill. 2d 298, 303 (1980)). The court noted that the defendant's "actions certainly denied [the victim] a large measure of control over his vehicle." *Strickland*, 154 Ill. 2d at 526. The car, however, "was never removed from [the victim's] actual possession." *Id.* The court concluded "that the State failed to establish one of the elements of armed robbery, and the defendant's conviction for that offense must therefore be reversed." *Id.*

¶ 78    In this case, like in *Strickland*, there was no evidence introduced at trial showing that Bias was ever dispossessed of his car. The record establishes that the defendant and his brother, while armed with weapons, kidnapped Bias from the driveway of his home by entering his car, with Bias behind the wheel. Approximately 35 minutes later, Bias was discovered in his burned out car still behind the wheel. We also note that the supreme court in *Strickland* implicitly rejected the argument the State makes before us that "taking control over the victim's car in his presence" was sufficient to make out a "taking" when the supreme court gave no significance to the *Strickland* defendant's actions that "denied [the victim] a large measure of control over his vehicle." *Strickland*, 154 Ill. 2d at 526.

¶ 79    Under these facts, we are compelled to conclude that the State failed to establish the taking element. We reverse the defendant's conviction of aggravated vehicular highjacking.

¶ 80                    6. Evidence of Concealment of Homicidal Death

¶ 81    Finally, the defendant challenges his conviction of concealment of homicidal death with

a two-pronged attack. He first contends the State failed to prove "the allegations set forth in the indictment charging Brandon with the concealment of Tyree Bias's death." He next contends the evidence only proved "that the homicide occurred in an isolated place." Under either prong, the defendant contends reasonable doubt remains of the defendant's guilt of this offense.

¶ 82    "A person commits the offense of concealment of homicidal death when he [knowingly] conceals the death of any other person with knowledge that such other person has died by homicidal means." 720 ILCS 5/9–3.1 (West 2008) (renumbered and amended by Pub. Act 96–710, § 25 (eff. Jan. 1, 2010)). Each essential element of the offense must be proved beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992).

¶ 83    We address the defendant's second contention first.

¶ 84                              a. Allegations in the Indictment

¶ 85    The indictment alleged that the defendant "committed the offense of concealment of homicidal death in that he, concealed the death of Tyree Bias with knowledge that he had died by homicidal means, to wit, [the defendant] put the body of Tyree Bias into a car in violation of" section 9–3.1(a) of the Criminal Code. 720 ILCS 5/9–3.1(a) (West 2008) (now codified as 720 ILCS 5/9–3.4 (West 2010)).

¶ 86    The State does not dispute the defendant's claim that the record does not contain any evidence from which a rational trier of fact could have found the defendant put the body of Bias into a car. The State contends, however, the allegation regarding the placing of the body into the car was surplusage. The State asserts the indictment was otherwise properly pled and the evidence at trial was sufficient to prove the defendant guilty of concealment of homicidal death beyond a reasonable doubt, although in a manner different than alleged in the indictment.

¶ 87    A charging document alleging a criminal offense must meet five pleading requirements: (1) the name of the offense; (2) the statutory provision allegedly violated; (3) the nature and elements of the offense charged; (4) the date and county of the offense; and (5) the name of the accused. 725 ILCS 5/111–3 (West 2010). The State is not required to plead evidentiary details. *People v. Meras*, 284 Ill. App. 3d 157, 164 (1996). "So long as the statutory language used describes *specific conduct* then there is no need for the charge to specify the exact means by which the conduct was carried out." (Emphasis added.) *People v. Wisslead*, 108 Ill. 2d 389, 397 (1985). Immaterial matters, or matters if omitted from an indictment would not render it insufficient or cause damage to material averments, may be regarded as surplusage. *People v. Figgers*, 23 Ill. 2d 516, 519 (1962).

¶ 88    Notably, the defendant does not claim that the language in the indictment he contends was not proved constitutes an essential element of the offense of concealment of homicidal death. Nor has the defendant presented us with any authority that the failure to prove "surplusage" alleged in the indictment constitutes grounds for challenging a conviction. See *People v. Williams*, 28 Ill. 2d 280, 285 (1963) (whether the defendant shot the victim in the back or in the chest was surplusage in the indictment for murder by shooting); *Meras*, 284

Ill. App. 3d at 164 ("means by which the killing was accomplished" was not an element of first degree murder). Nor will we provide such authority in this case.

¶ 89    We reject the defendant's claim that the State's failure to prove the defendant "put the body of Tyree Bias into a car" somehow undermines his conviction for concealment of homicidal death.

¶ 90                                    b. Evidence of Concealment

¶ 91    The defendant asserts that no concealment occurred; rather, the evidence only established that the murder "occurred in an isolated place." To support this claim, the defendant analogizes the facts of this case to the facts in *People v. Vath*, 38 Ill. App. 3d 389 (1976). In *Vath*, the Fifth District reversed the defendant's conviction for concealment because the evidence established nothing more than the murder victim was left along an isolated country road. *Id.* at 395.

¶ 92    We reject the defendant's claim that the evidence in this case amounts to no more than the evidence presented in *Vath*. The evidence here included, as the defendant acknowledges, that Bias's body was so severely burned that it was rendered "unrecognizable." The defendant also concedes that "Ernest testified that [the defendant] told him he lit his own shirt on fire" when he returned to the car after it crashed through the fence into the brush. Much as the defendant argued in his challenge to the sufficiency of the evidence that he was guilty of murder, the defendant points to the conflicting evidence, some from Ernest McCarter himself, regarding the source of the fire to challenge his conviction for concealment of homicidal death.

¶ 93    The evidence is overwhelming that the defendant had knowledge that Bias "died by homicidal means." 720 ILCS 5/9–3.1 (West 2008) (renumbered and amended by Pub. Act 96–710, § 25 (eff. Jan. 1, 2010)). The trial judge was also free to draw the reasonable inference that the defendant knowingly sought to conceal Bias's murder by setting his shirt on fire in an effort to conceal the manner of his death. See *People v. Kirkman*, 170 Ill. App. 3d 106, 110 (1988); *Cf. Vath*, 38 Ill. App. 3d at 395 (the offense proscribes concealing the death by "making a homicide appear an accident"). In *Vath*, the court rejected the State's argument "that an inference can be drawn that defendant 'dumped' the body on the secluded road to impede discovery of the crime" because there was no affirmative act of concealment by the defendant. *Vath*, 38 Ill. App. 3d at 395.

¶ 94    In the instant case, there is no room in the evidence for the defendant to dispute that Bias's car burned after Bias was killed, which we find sufficient to prove his guilt of concealment of homicidal death beyond a reasonable doubt. *Kirkman*, 170 Ill. App. 3d at 110.

¶ 95                                          CONCLUSION

¶ 96    The evidence introduced at trial was sufficient to find the defendant guilty beyond a reasonable doubt of murder and concealment of homicidal death. We affirm those

-20-

convictions. It was plain error to admit portions of Ms. Johnson's prior inconsistent statement to prove the defendant committed armed robbery. We vacate the armed robbery conviction and the conviction on count VIII charging aggravated kidnapping based on armed robbery. However, we remand to permit the circuit court to enter a judgment of conviction on a count charging aggravated kidnapping other than count VIII, with a new sentencing hearing on the new count if necessary. We also reverse the defendant's conviction for aggravated vehicular hijacking as the facts established by the State's evidence failed to prove that Bias was ever dispossessed of his car.

¶ 97       Affirmed in part and vacated in part; cause remanded for further proceedings.

¶ 98       JUSTICE ROBERT E. GORDON, dissenting:

¶ 99       The majority reverses defendant's convictions for armed robbery and vehicular hijacking. Since I cannot join in these reversals, I must respectfully dissent, for the reasons explained below.

¶ 100                          I. Armed Robbery Conviction

¶ 101      The majority reverses defendant's armed robbery conviction on the ground that defendant established ineffective assistance of counsel. *Supra* ¶ 56.

¶ 102      Claims of ineffective assistance of counsel are governed by the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and adopted by the Illinois Supreme Court in the case of *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show *both* (1) that counsel's performance was deficient; and (2) that this deficient performance prejudiced defendant. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010) (citing *Strickland*, 466 U.S. at 694).

¶ 103      To satisfy the first prong, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms; and to satisfy the second prong, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different. *Petrenko*, 237 Ill. 2d at 496-97 (citing *Strickland*, 466 U.S. at 694).

¶ 104      I find that defendant has failed to satisfy both prongs.

¶ 105                              A. Second Prong

¶ 106      The majority finds prejudice under the second prong, because trial counsel allegedly failed to object to the admission of two portions of Ms. Johnson's statement. Those two portions included (a). statements by Jamie McCarter; and (b). Ms. Johnson's understanding of statements that defendant made directly to her. *Supra* ¶ 37. The majority holds that, without these statements, the State could not prove that the deceased was also the victim of a robbery. *Supra* ¶ 50-51.

¶ 107      With respect to the statements by Jamie McCarter, the majority acknowledges that

-21-

defendant argued that these statements "did not fall under the co-conspirator exception to the hearsay rule." *Supra* ¶ 37. However, the majority offers no analysis of why the statements do *not* fall under the co-conspirator exception. Instead, the majority rules the statements inadmissible simply because they did not fall within *another* hearsay exception, that was "not [even] addressed by the defendant." *Supra* ¶ 40.

¶ 108 A statement needs to be admissible under only one exception to be admissible. The fact that it is not *also* admissible under some other exception–not even argued by defendant–has no effect on its admissibility. Thus, I would find that McCarter's statement was admissible.

¶ 109 Since Jamie McCarter's statement that he searched the victim's pockets and retrieved $3,000 was sufficient evidence of a robbery, I cannot agree with the majority's holding that the State's evidence of a robbery was deficient. *Supra* ¶ 56.

¶ 110 The majority stated "Sergeant Dempsey testified that h0e found 'a wad of burnt up money' in Bias's car, which tended to show that money was not taken from Bias." *Supra* ¶ 53. Simply because the robbers failed to locate *all* the money, I do not understand how that leads to the conclusion that they did not take *any* money. If anything, the officer's discovery substantiates Jamie McCarter's statement that there was substantial money present for the taking.

¶ 111 For these reasons, I would find that defendant has failed to show that, but for the alleged error, there is a reasonable probability that the proceeding would have been different. *Petrenko*, 237 Ill. 2d at 496-97 (citing *Strickland*, 466 U.S. at 694). Thus, defendant has failed to satisfy the second prong of the *Strickland* test.

¶ 112                                   B. First Prong

¶ 113 Defendant has also failed to satisfy the first prong. As stated above, to satisfy the first prong, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms. *Petrenko*, 237 Ill. 2d at 496-97 (citing *Strickland*, 466 U.S. at 694).

¶ 114 The majority finds that trial counsel "rendered deficient representation by failing to object to the portions of Ms. Johnson's prior inconsistent statement that were not based on her personal knowledge." *Supra* ¶ 55. I find this statement unpersuasive on several different levels.

¶ 115 First, it reduces the two prongs of the test into one. It finds that, since an objection would have been successful, defendant was *prejudiced* by counsel's failure to make it, and therefore counsel's performance *must have been* deficient. The purpose of the first prong is to ensure that counsel's performance is not judged by hindsight. *Strickland*, 466 U.S. at 689 (counsel's performance must be evaluated without the "distorting effects of hindsight"); *Petrenko*, 237 Ill. 2d at 496-97 (first prong is based on prevailing professional norms). The second prong, and the second prong alone, evaluates prejudice: whether there was a reasonable probability that, but for the alleged error, the outcome would have been different. *Petrenko*, 237 Ill. 2d at 496-97. The first prong asks a different question. Even if the outcome would have been different, was counsel's performance still so deficient as to be objectively unreasonable

under prevailing professional norms. *Petrenko*, 237 Ill. 2d at 496-97. The majority does not evaluate this question.

¶ 116     Second, the majority finds that defense counsel was ineffective solely for the failure to make one objection and only one objection, namely, that the personal knowledge requirement barred admissibility of the statement as a prior inconsistent statement. *Supra* ¶ 55 (trial counsel "rendered deficient representation by failing to object to the portions of Ms. Johnson's prior inconsistent statement that were not based on her personal knowledge"). In other words, the majority finds that the only exception which could have allowed admissibility was the exception for prior inconsistent statements and that, since the statement was inadmissible under this exception, counsel was allegedly ineffective for failing to make this objection. If, however, the statement was admissible under another exception, such as the co-conspirator's statement, this logic fails.

¶ 117     Third, the majority fails to consider whether trial counsel had a valid, though ultimately unsuccessful, trial strategy for deciding not to object. "In demonstrating, under the first *Strickland* prong, that his counsel's performance was deficient, a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy." *People v. Houston*, 226 Ill. 2d 135, 144 (2007). As the majority pointed out, since the statement about the $3,000 was not repeated by other witnesses, it created a conflict among the state's witnesses. It could have been a valid trial strategy to let this conflict stand.

¶ 118     For these reasons, I cannot find that defense counsel's performance was so deficient as to fall below prevailing professional norms. Since neither the first nor the second prong of the *Strickland* test is satisfied, I cannot join in the majority's reversal of defendant's armed robbery conviction on this ground.

¶ 119                                II. Aggravated Vehicular Hijacking

¶ 120     The majority reversed defendant's conviction for aggravated vehicular hijacking, on the ground that there was no evidence that Bias, the vehicle's owner, was dispossessed of his vehicle. *Supra* ¶ 78. As the majority observed, Bias was found murdered in his own burned-out vehicle. *Supra* ¶ 77. The majority fails to consider whether burning the vehicle deprived the owner, or his successor in interest, of the vehicle's possession or custody. One would think that destruction is the ultimate form of dispossession.

¶ 121     For these reasons, I dissent from the majority's reversal of defendant's convictions for armed robbery and aggravated vehicular kidnapping. As a result, I also dissent from the portion of the opinion which directs the trial court to enter a judgment of conviction for aggravated kidnaping based on a different count other than the armed robbery count. I would affirm the judgment in all respects.

¶ 122     Thus, I must respectfully dissent.