2020 IL App (1st) 171505-U

SIXTH DIVISION
July 24, 2020

No. 1-17-1505

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 05 CR 28525 |
| | ) | |
| CURTIS GREER, | ) | Honorable Arthur F. Hill, Jr., |
| | ) | Judge Presiding. |
| Petitioner-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Cunningham and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:* Defendant's allegations of ineffective assistance of appellate counsel demonstrate a substantial showing of a constitutional violation so as to require a third-stage evidentiary hearing. Reversed and remanded.

¶ 2    Defendant, Curtis Greer, appeals from a judgment dismissing his *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)).  Defendant contends that he made substantial showing of ineffective assistance of appellate counsel for failing to raise a meritorious issue on appeal, and therefore his

petition was improperly dismissed at the second stage of postconviction proceedings. For the following reasons, we reverse and remand for a third-stage evidentiary hearing.

¶ 3                                    I. BACKGROUND

¶ 4      The facts of the underlying case were discussed in detail on direct appeal in *People v. Greer*, 2012 IL App (1st) 090997-U, and will only be repeated here as necessary. Defendant was arrested in connection with the killing of Petrit Turkeshi, a janitor who was found dead in a stairwell of a residential building in Rogers Park.

¶ 5                                    A. Trial

¶ 6      The following evidence was adduced at trial. After a night of "heavy crack cocaine abuse," defendant and a man he knew as Andre (or Dre) snuck into a residential apartment building and fell asleep in the stairwell. *Id.* ¶ 2. Sometime later, defendant was awakened by Turkeshi, who ordered defendant and Andre to leave the building. *Id.* Turkeshi walked the two men down to the bottom of the stairwell, which opened up near a laundry room. *Id.* As Turkeshi escorted them out of the building, Andre turned and punched Turkeshi in the face. *Id.* Andre then fled out the back door of the building. *Id.* Defendant tried to follow Andre, but Turkeshi grabbed defendant's neck. Defendant knocked Turkeshi's hand away, and Turkeshi punched defendant in the eye. *Id.*

¶ 7      Defendant and Turkeshi then began "fighting in earnest, trading punches and hitting each other in the face." *Id.* ¶ 3. Turkeshi grabbed defendant's coat, and defendant punched and kicked Turkeshi until he was able to pull away. *Id.* At some point during the struggle, defendant and Turkeshi ended up in the laundry room and knocked a fire extinguisher from the wall. *Id.* According to defendant, Turkeshi grabbed the fire extinguisher and raised it over his head, blocking the door. Defendant testified that before Turkeshi could throw the fire extinguisher at

him, "I wrestled him and grabbed it and slammed it on top of his head." On cross-examination the following colloquy took place:

> "Q:     After you continued to tussle, you were the one that picked up the fire extinguisher?
>
> A:     No, [Turkeshi] did.
>
> Q:     How did you get the fire extinguisher?
>
> A:     I never had it. I just rushed him and slammed it down on him.
>
> Q:     So while he's holding it, you slammed it on his head?
>
> A:     Yes."

¶ 8      Defendant testified that Turkeshi then dropped to one leg and dropped the fire extinguisher. Defendant ran out the front door.

¶ 9      Turkeshi's body was found some time later, and an autopsy concluded that he had died of blunt force trauma to the head. *Id.* ¶ 4. The autopsy also found numerous scrapes and bruises on his body, in addition to significant damage to his skull and brain. *Id.* Defendant was apprehended about 11 months later, at which time he blamed Andre for the killing. *Id.* Over the course of several interrogations, defendant eventually confessed to the crime, telling police a number of different versions of the incident that varied only in certain minor details. *Id.*

¶ 10     Given defendant's multiple confessions, defense counsel argued at trial that the evidence showed that defendant had killed Turkeshi during mutual combat, which if true would mean that defendant could only be guilty of second degree murder rather than first degree murder. *Id.* ¶ 5.

¶ 11     At the close of evidence, the trial court stated:

> "Mr. Turkeshi was attempting to detain [defendant] and holding him in
>
> place and threatening him. That's when he was holding the fire extinguisher over

his head, and gave [defendant], he took the fire extinguisher and pulled it down which caused the fatal blows.

So that would be reasonable to justify or exonerate him.

I have given a lot of thought to this, but I think that since he wasn't supposed to be there. And wasn't really in self-defense, he knew he wasn't supposed to be there, so it wasn't reasonable to fight back and enter into it.

He could have done the reasonable thing, which would be to wait at that point, wait for authorities. People don't do that, but I would think being somewhere illegally, it would not justify you fighting with someone who is trying to detain you from being there illegally."

¶ 12    The trial court rejected defendant's argument and found him guilty of first degree murder. Defendant filed a motion for a new trial, arguing that the "[c]ourt erred in finding defendant guilty of first degree murder" because the defense "raised sufficient evidence for the [c]ourt to find him guilty of second degree murder." Denying the motion, the trial court stated it had seriously considered second degree murder, but ultimately decided against it. Defendant was sentenced to 20 years in prison.

¶ 13                                B. Direct Appeal

¶ 14    On appeal, defendant argued that he acted in justifiable self-defense when he killed Turkeshi. As we stated in our order, "the important point is that [defendant] argues only that he should have been acquitted because the State failed to disprove his claim of perfect self-defense beyond a reasonable doubt, as is required under section 7-1" (720 ILCS 5/7-1 (West 2010)), and not whether defendant should have been found guilty only of second degree murder based on a claim of imperfect self-defense under section 9-2(a)(2) (720 ILCS 5/9-2(a)(2) (West 2010)). *Id*. ¶

8. We stated that we therefore did "not consider whether defendant should have been found guilty only of second degree murder based on a claim of imperfect self-defense under section 9-2(a)(2)." *Id*.

¶ 15 We went on to explain that as far as perfect self-defense went, there was a "significant problem" with defendant's argument: he never raised it in the trial court. It is well-settled that self-defense is an affirmative defense that is forfeited if not properly raised by the defendant at trial, so we did not consider this issue on appeal. *Id*. ¶ 9 (citing *People v. Worsham*, 26 Ill. App. 3d 767, 771-72 (1975)).

¶ 16 Defendant's second argument on appeal was that he carried his burden under section 9-2(a)(1) to prove the necessary elements to reduce his first degree murder conviction to second degree murder. *Id*. ¶ 10. Defense counsel's theory of second degree murder was that defendant had engaged in mutual combat with Turkeshi. *Id*. Mutual combat is "a fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." *People v. Austin*, 133 Ill. 2d 118, 125 (1989). We found that the problem with the mutual combat defense was the mutuality element. *Id*. ¶ 12. Defendant entered the fight when Turkeshi grabbed him by the neck. Turkeshi entered the fight when Andre punched Turkeshi in the face. Accordingly, we found that a rational trier of fact could have found that defendant failed to carry the burden of showing mutual combat. *Id*.

¶ 17 Defendant also argued that the trial court misstated the law by saying that defendant was not entitled to defend himself because he was a trespasser and, second, that Turkeshi was trying to detain defendant for the police was a fact not in evidence. *Id*. ¶ 14. Finding that defendant had

forfeited this issue for failing to object at trial, we reviewed this issue under the plain error doctrine. *Id*. We stated:

"Even if we assume for the purpose of argument that the trial court's comments were in error, there are two flaws in defendant's argument. First, the pertinent question is whether the evidence regarding defendant's mutual combat theory is closely balanced. The question of self defense was not before the court because defendant did not assert it at trial, so whether trespassers are entitled to defend themselves is irrelevant. Indeed, as part of its comments the trial court noted that defendant 'wasn't really in self-defense,' indicating that self-defense was not under consideration. Second, the evidence regarding mutual combat was not closely balanced. The sequence of events was undisputed because the entire account of the incident came from one source: defendant himself." *Id*. ¶ 15.

¶ 18    This court affirmed defendant's conviction and sentence. *Id*. ¶ 19.

¶ 19                              C. Post-Conviction Proceedings

¶ 20    On November 1, 2013, defendant filed a *pro se* postconviction petition alleging ineffective assistance of appellate counsel for: (1) failing to argue on direct appeal that trial counsel was ineffective for failing to raise perfect self-defense at trial; and (2) failing to argue that defendant's conviction for first degree murder should be reduced to second degree murder based on imperfect self-defense. Defendant attached his own affidavit stating that he had suggested to his trial counsel that trial counsel raise self-defense and that "during my direct appeal I indicated to appellate counsel that I believed that my trial counsel was ineffective due to failure to raise self defense to the charge of murder at trial." He further stated that he "suggested

6

to appellate counsel *** that my conviction should be reduced to second degree murder based on an unreasonable belief in self-defense included in my brief on appeal."

¶ 21    On December 8, 2014, the case was docketed, and an assistant public defender was assigned to the case. On June 30, 2016, the assistant public defender filed a Rule 651(c) certificate indicating that she had (1) consulted with defendant to "ascertain his contentions of deprivations of his constitutional rights;" (2) had obtained and examined the report of proceedings; and (3) had reviewed defendant's petition, finding that no amendments were necessary for adequate presentation of his contentions.

¶ 22    On September 14, 2016, the State filed a motion to dismiss defendant's postconviction petition, arguing in part that this court rejected defendant's argument that he should have been convicted of second degree murder based on self-defense, and any attempt to resurrect the issue in postconviction proceedings was barred by *res judicata*. The State further argued that while appellate counsel did not specifically allege that trial counsel was ineffective for failing to raise self-defense, this court determined that a claim of self-defense was not applicable in this case and found that defendant was properly convicted of first degree murder.

¶ 23    On October 27, 2016, defendant's postconviction counsel asked for a date to respond to the State's motion. On December 1, 2016, counsel asked for more time to talk with defendant about the State's motion. Counsel never filed a response.

¶ 24    On May 25, 2017, a hearing took place on the State's motion to dismiss. The State argued that appellate counsel did not specifically allege that trial counsel was ineffective for failing to raise self-defense, but that it was the State's belief that the appellate court did a careful analysis of the facts and determined that a claim of self-defense was not applicable.

¶ 25    Defendant's postconviction counsel argued that trial counsel was ineffective for failing to raise self-defense, and that the failure was prejudicial to defendant, who was serving 20 years in prison for a first degree murder conviction. Counsel argued that force was threatened against defendant and that he was not the aggressor. He was in danger of imminent harm. The threat of force was lawful. He was personally threatened, and he believed that danger existed that required use of force against Turkeshi. Counsel argued that while trial counsel put forth a mutual combat argument, there was no mutuality because defendant was in imminent fear for his life. Trial counsel should have argued self-defense.

¶ 26    The trial court granted the State's motion to dismiss, stating that among the totality of the circumstances included the fact that defendant, along with Andre, illegally entered into an apartment building and were therefore trespassers, "at a minimum." The trial court stated that in an effort to get them out of the apartment building, Turkeshi was killed, and self-defense would not have been an available defense. This appeal follows.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, defendant first argues that he made a substantial showing that appellate counsel was ineffective where there was sufficient evidence of self-defense but appellate counsel failed to argue trial counsel's ineffectiveness for failing to raise the issue at trial.

¶ 29    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2016). A postconviction proceeding is not an appeal from the judgment of conviction, but rather is a collateral attack on the trial court proceedings. *People v. English*, 2013 IL 112890, ¶ 21. To be entitled to postconviction relief, a

8

defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the challenged judgment. *Id.*

¶ 30    The purpose of a postconviction proceeding is to permit inquiry into constitutional issues that were not, and could not have been, adjudicated previously on direct appeal. *Id.* ¶ 22. Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* However, the doctrines of *res judicata* and forfeiture are relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record. *Id.*

¶ 31    The Act provides a three-stage process for adjudicating postconviction petitions. *Id.* ¶ 23. At the first stage, a trial court considers whether the postconviction petition is frivolous or patently without merit. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 46. If the postconviction petition survives the first-stage review, it proceeds to the second stage and is docketed "for further consideration in accordance with Sections 122-4 through 122-6." 725 ILCS 5/122-2.1(b) (West 2016). At the second stage, counsel is appointed, and the *pro se* petition may be amended. *Thomas*, 2014 IL App (2d) 121001, ¶ 46. The State then has 30 days to file a motion to dismiss or answer the petition. 725 ILCS 5/122-5 (West 2016). If the State files a motion to dismiss, the burden is on the defendant to make a "substantial showing" of a constitutional violation. *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 20. The proceedings advance to the third stage if the State answers the petition or the court denies the State's motion to dismiss. At the third stage, the postconviction defendant may submit evidence supporting his claim. 725 ILCS 5/122-6 (West 2016).

¶ 32    In the case at bar, an inmate named Festus Brown filed a *pro se* postconviction petition for defendant without his authorization. The trial court summarily dismissed the petition. With the help of counsel from his direct appeal, defendant filed a motion to vacate the summary dismissal and withdraw the petition. The court appointed a public defender to defendant for the hearing, at which time the motion to vacate was granted. Defendant then filed the *pro se* postconviction petition at issue in this appeal. The trial court docketed defendant's petition "for further consideration in accordance with Sections 122-4 through 122-6." 725 ILCS 5/122-2.1(b) (West 2016).

¶ 33    This court reviews the dismissal of a postconviction petition at the second stage *de novo*. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). To survive a motion to dismiss, a defendant must make a "substantial showing" that his constitutional rights were violated by supporting his allegations with the trial record or appropriate affidavits. *People v. Simpson*, 204 Ill. 2d 536, 546-47 (2001). In reviewing a petition at this stage, all the "well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient." *People v. Barnslater*, 373 Ill. App. 3d 512, 519 (2007). A substantial showing of a constitutional violation is a "measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which, if proven at an evidentiary hearing, would entitle defendant to relief." *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 34    There is no question that trial counsel forfeited the claim of self-defense by failing to raise it at trial. On direct appeal, this court noted that self-defense is an affirmative defense that is forfeited if not properly raised by the defendant at trial, and thus we could not consider the issue on appeal. *Greer*, 2012 IL App (1st) 090997-U, ¶ 9 (citing *People v. Worsham*, 26 Ill. App. 3d 767, 771-72 (1975)). Defendant's claim, therefore, is that appellate counsel was ineffective for

failing to allege ineffective assistance of trial counsel on direct appeal based on trial counsel's

forfeiture of the claim of self-defense.

¶ 35     When an issue is forfeited on appeal due to ineffective assistance of trial counsel, this

court may reach the issue on appeal under the plain error doctrine. See *People v. McCarter*, 2011

IL App (1st) 092864, ¶¶ 35-37 (overruled on other grounds by *People v. Reese*, 2017 IL

120011); see also *People v. Gill*, 264 Ill. App. 3d 451, 461 (1992) ("we will review defendant's

contention in light of the argument that he received ineffective assistance of counsel when trial

counsel failed to argue *** self-defense"). The plain error doctrine permits a reviewing court to

address an unpreserved error when (1) the evidence is so closely balanced that a clear and

obvious error alone threatened to tip the scales of justice against the defendant, or (2) an error so

serious occurred that it affected the fairness of the defendant's trial and challenged the integrity

of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

¶ 36     To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate

(1) counsel's performance fell below an objective standard of reasonableness, and (2) the

deficiency in counsel's performance was prejudicial to the defendant. *Strickland v. Washington*,

466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 503 (1984). "If the defendant is able to

establish that trial counsel rendered constitutionally deficient representation, then he has proved

plain error under the second prong as well." *McCarter*, 2011 IL App (1st) 092864, ¶ 37. The

second prong of plain error is triggered if a defendant can successfully prove ineffective

assistance of counsel because this is considered a substantial impairment of fundamental rights

under the *Herron* test. *Id*.

¶ 37     Here, trial counsel's strategy was to argue second degree murder based on mutual

combat. A person commits the offense of second degree murder when he commits the offense of

first degree murder as defined by paragraphs (1) or (2) of subsection 9-1 of the Code, but "at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed." 720 ILCS 5/9-2(b) (West 2016). The statute defines serious provocation as "conduct sufficient to excite an intense passion in a reasonable person." *Id*. For the purpose of mitigation of first degree murder based on serious provocation, the only categories of provocation that are recognized by the Illinois Supreme Court are (1) substantial physical injury or assault; (2) mutual quarrel or combat; (3) illegal arrest; and (4) adultery with the offender's spouse. *People v. Chevalier*, 131 Ill. 2d 66, 73 (1989).

¶ 38    As this court noted on appeal, the problem with the mutual combat argument was that the victim did not enter the fight willingly, but rather Andre started it. *Greer*, 2012 IL App (1st) 090997-U, ¶ 12. Moreover, Turkeshi grabbed defendant by the neck as he tried to flee "so it can be argued that in this instance Turkeshi was the instigator, not defendant." *Id*. We ultimately found that because there was no mutuality, there was no mutual combat and therefore there was sufficient evidence to support a conviction of first degree murder. *Id*

¶ 39    Self-defense, on the other hand, is an affirmative defense. Under Illinois law the affirmative defense of self-defense can be raised only if a defendant presents some evidence as to each of the following elements: (1) force had been threatened against the defendant; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable. *People v. Lee*, 213 Ill. 2d 218, (2004).

¶ 40    If a defendant presents "some evidence as to each of these elements," the burden shifts to the State to disprove the defense beyond a reasonable doubt. *People v. Willis*, 217 Ill. App. 3d

909, 917 (1991). The State needs only to negate one element listed above to defeat a self-defense claim. *People v. Bennett*, 2017 IL App (1st) 151619, ¶ 33. Whether or not the testimony and evidence support a self-defense claim is to be determined by the trier of fact. *Id.*

¶ 41    Here, as noted above, the record reflects that Turkeshi grabbed defendant by the neck as defendant was trying to flee. This court noted on direct appeal that defendant was not the aggressor as he did "not enter the fight willingly" and that it could "be argued in this instance Turkeshi was the instigator, not defendant." *Greer*, 2012 IL App (1st) 090997-U, ¶ 12. The evidence at trial showed that defendant then fought back, and their struggle led them to a laundry room. A fire extinguisher fell off the wall, and Turkeshi picked it up. Defendant testified at trial that Turkeshi stood over him with the fire extinguisher and that he believed Turkeshi was going to throw it at him. See *People v. Stokes*, 185 Ill. App. 3d 643, 656 (1989) (unlawful force has been defined as situations in which the threatened force will cause death or great bodily harm, or the force threatened is a felony). The trial court never stated that defendant's testimony was not credible. The trial court noted in making its finding that this would "justify or exonerate" defendant in using force against Turkeshi. Defendant then pushed the fire extinguisher down on Turkeshi's head before fleeing the building.

¶ 42    The State contends that defendant's use of deadly force was not justified where he "disarmed" Turkeshi, and where he had "retrieved" the fire extinguisher. See *People v. Stokes*, 185 Ill. App. 3d 643, 657 (1989) (the use of deadly force generally cannot be justified once the aggressor has been disarmed or disabled). However, a careful review of the record reveals that defendant's testimony was that Turkeshi held the fire extinguisher over his head, and defendant, believing Turkeshi was going to hit him with the fire extinguisher, slammed it down onto Turkeshi's head. Defendant testified as follows:

13

"Q:     After you continued to tussle, you were the one that picked up the fire

extinguisher?

A:     No, [Turkeshi] did.

Q:     How did you get the fire extinguisher?

A:     I never had it. I just rushed him and slammed it down on him.

Q:     So while he's holding it, you slammed it on his head?

A:     Yes."

¶ 43     Turkeshi then dropped the fire extinguisher and defendant fled. There was no evidence presented that defendant took the fire extinguisher away from Turkeshi or disarmed him before using deadly force.

¶ 44     Defendant's status as a trespasser also does not negate any of the elements of self-defense, despite what the trial court stated in ruling on defendant's postconviction petition. In granting the State's motion to dismiss defendant's postconviction petition, the trial court stated:

"In this case, among the totality of the circumstances includes the fact that the defendant, *** along with a companion *** illegally entered into an apartment building. They were trespassers. At a minimum, they were trespassers. And in the efforts to try to get them out of this apartment building, the janitor was killed.

In this circumstance, again, looking at the totality of the circumstances, this court does not believe that self-defense was the appropriate or would be an available defense."

¶ 45     This court has found, however, that in the case of a trespasser, the use of force against a property owner may, in certain cases, be justified on the basis of self-defense if the owner uses

excessive force in attempting to remove the trespasser from the owner's property. *People v. Connelly*, 57 Ill. App. 3d 955, 957 (1978) (citing *People v. Dillard*, 5 Ill. App. 3d 896 (1972)). "However, no amount of force by a trespasser can be justified unless he reasonably believes that force is necessary to alleviate the imminent danger posed by the landowner. A defendant may not continue to use force against an antagonist who has been disarmed or disabled." *Id*. Here, as mentioned above, there was at least some evidence that defendant reasonably believed that force was necessary to alleviate the imminent danger posed by Turkeshi when Turkeshi raised the fire extinguisher above his head.

¶ 46    We can think of no reasonable explanation for why trial counsel did not argue self-defense, which is an affirmative defense to first degree murder, resulting, if successful, in an acquittal. To prevail on an ineffective assistance of counsel claim for failing to advance a particular theory, the defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Domagala*, 2013 IL 113688, ¶ 36; *Gill*, 264 Ill. App. 3d at 461. Here, there is a reasonable probability that the trial outcome would have been different had trial counsel claimed self-defense because there was at least some evidence of all six elements of self-defense, and defendant's status as a trespasser did not negate any of those elements. We therefore find that trial counsel was ineffective for failing to raise self-defense at trial.

¶ 47    Because defendant would likely have been able to establish that trial counsel rendered constitutionally deficient representation, he therefore would likely have proved plain error under the second prong as well. See *McCarter*, 2011 IL App (1st) 092864, ¶ 37 (the second prong of plain error is triggered if a defendant can successfully prove ineffective assistance of counsel because this is considered a substantial impairment of fundamental rights under the *Herron* test).

15

It follows that appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel pursuant to the plain error doctrine. See *People v. Dixon*, 2019 IL App (1st) 160443, ¶ 46 ("where a defendant raises ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel, the ultimate question as to prejudice asks whether the claim of *trial* counsel's ineffectiveness has merit"). Accordingly, we find that defendant made a substantial showing that he received ineffective assistance of appellate counsel, and his petition should advance to a third stage evidentiary hearing. *People v. Coleman*, 182 Ill. 2d 366, 381 (1998) (at the second stage of postconviction proceedings, the court must determine whether the defendant made a substantial showing of a constitutional violation).

¶ 48     Defendant's second issue on appeal is that the trial court improperly dismissed his second argument in his postconviction petition – that appellate counsel was ineffective for not arguing second degree murder based on imperfect self-defense on direct appeal. On appeal, appellate counsel only argued perfect self-defense, as discussed above. As we stated on direct appeal, we did "not consider whether defendant should have been found guilty of second degree murder based on a claim of imperfect self-defense" because appellate counsel only argued that defendant should have been acquitted based "on a claim of perfect self-defense." *Greer*, 2012 IL App (1st) 090997-U, ¶ 8.

¶ 49     Defendant claims that appellate counsel was ineffective for failing to argue second degree murder based on imperfect self-defense on appeal. The two-pronged *Strickland* test applies to allegations of ineffective assistance of appellate counsel. *People v. Caballero*, 126 Ill. 2d 248, 269-70 (1989). A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts showing such failure was objectively unreasonably and that counsel's decision prejudiced defendant. *People v. Enis*, 194 Ill. 2d 361, 377 (2000). Prejudice is

demonstrated if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Enis*, 194 Ill. 2d at 376-77.

¶ 50     Second degree murder is a lesser mitigated form of first degree murder. *People v. Parker*, 223 Ill. 2d 494, 506 (2006). To find a defendant guilty of second degree murder based on imperfect self-defense, the trial court must find that the State proved the defendant guilty of first degree murder beyond a reasonable doubt, and the defendant proved by a preponderance of the evidence that the defendant believed at the time the circumstances would "justify or exonerate" the killing, but that belief was unreasonable. 720 ILCS 5/9-2 (West 2016). In other words, the imperfect self-defense form of second degree murder occurs when there is sufficient evidence that the defendant believed he was acting in self-defense, but that believe is objectively unreasonable. See *People v. Jeffries*, 164 Ill. 2d 104, 113 (1995).

"To summarize, when a defendant is found guilty of second degree murder, the trier of fact has, in essence, concluded that the evidence that the defendant has offered was not sufficient to support his claim of self-defense. The defendant, however, has proven by a preponderance of the evidence the existence of a mitigating factor sufficient to reduce the offense of murder to second degree murder. The defendant is not compelled to show that he had an unreasonable belief in the necessity for the use of force to obtain a second degree murder conviction. Rather, after the defendant has presented the best evidence for his defense, the trier of fact has concluded that the evidence only supports a finding

of second degree murder and not absolute justification for defendant's actions."

*Id*. at 129.

¶ 51    Here, appellate counsel only argued on direct appeal that defendant's sentence should be reduced to second degree murder based on mutual combat, despite the fact that the claim of imperfect self-defense had been preserved on appeal. At trial, defense counsel argued second degree murder but did not specify one form or another. The trial court found that Turkeshi was holding the fire extinguisher over defendant's head which would "justify or exonerate" defendant in using force, but that it "wasn't reasonable" for defendant "to fight back and enter into it" because Turkeshi had been holding defendant back "for police," and because defendant and Andre were trespassers. The trial court then convicted defendant of first degree murder.

¶ 52    We find that appellate counsel was ineffective for failing to argue that defendant's conviction should be reduced to second degree murder based on imperfect self-defense. As we stated above, evidence was presented on all elements of self-defense. As the trial court noted, there was evidence that defendant believed at the time the circumstances would "justify or exonerate" the killing. The trial court stated that defendant's belief was unreasonable because he should have waited for authorities to arrive. However, instead of finding defendant guilty of second degree murder, the trial court found him guilty of first degree murder. Had appellate counsel argued second degree murder based on imperfect self-defense on appeal, rather than (or in conjunction with) second degree murder based on mutual combat, there is a reasonable probability that this court would have reduced his sentence to second degree murder. See *Strickland*, 466 U.S. at 694; *Enis*, 194 Ill. 2d at 376-77 (a reasonable probability is one that is sufficient to undermine confidence in the outcome).

¶ 53    At this pleading stage of the postconviction process, the allegations of ineffective assistance of appellate counsel demonstrate a substantial showing of a constitutional violation so as to require an evidentiary hearing. We take no position on defendant's ability to prove his ineffective assistance claims. However, an evidentiary hearing will provide a fully developed factual record regarding the allegations of ineffective assistance of appellate counsel. See *People v. Makiel*, 358 Ill. App. 3d 102, 119 (2005).

¶ 54

¶ 55                                    III. CONCLUSION

¶ 56    For the foregoing reasons, we reverse the trial court's grant of the State's motion to dismiss defendant's postconviction petition, and remand for a third-stage evidentiary hearing.

¶ 57    Reversed and remanded.