THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY GOODAR, Defendant-Appellant.

First District (4th Division)   No. 1—91—2415

Opinion filed February 25, 1993.—Rehearing denied March 25, 1993.

Rita A. Fry, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Rogelio Pena, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Anthony Goodar, was convicted of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(8)), following a jury trial in the circuit court of Cook County. Defendant was sentenced to a three-year term in the Illinois Department of Corrections and subsequently entered an impact incarceration program. On appeal, defendant contends that (1) the trial court failed to properly instruct the jury; (2) he was denied a fair trial because the jury instructions broadened the charge against him; and (3) he was not proved guilty beyond a reasonable doubt.

We affirm.

On April 18, 1989, at approximately 8:30 p.m., Larry Mallory and O.C. Dorham visited a friend at 1380 East Hyde Park Boulevard in Chicago. At approximately 11:30 p.m., the two left their friend's apartment and went to Mallory's car, which was parked in the parking lot immediately across from the building. As Mallory attempted to pull out of the parking space, defendant's car struck the left wheel base of Mallory's car. Defendant quickly exited his vehicle and rushed toward Mallory. M.C. Martin was a passenger in defendant's car. Defendant, using foul language, began threatening Mallory. As defendant advanced aggressively toward Mallory, Mallory asked defendant to calm down. Mallory also informed defendant that he was insured.

Meanwhile, a University of Chicago police officer happened by the scene. Defendant cursed at the officer. The officer stated that the Chicago police would have to handle the traffic matter and then left the scene.

Johnny Robinson, a 58-year-old security guard from the 1380 building, also approached the scene to investigate. Defendant cursed at Robinson and began advancing toward him. Robinson pulled out a knife in order to maintain some distance between himself and defendant. Robinson then returned to the building.

Mallory and defendant went inside the building and called police. They were told that they would have to drive to the police station. Dorham attempted to drive Mallory's car and defendant followed in his car. After travelling approximately 20 feet, Dorham pulled over to the curb because the wheel and axle on Mallory's car were bent, rendering the car immobile.

Defendant pulled his car alongside Mallory's car. Mallory then got out of his car to inspect the damage. Dorham suggested that they all ride to the police station together in defendant's car, but defendant refused. Defendant and Martin then attacked Mallory, hitting him in

the head from behind. Mallory fell to the ground while defendant and Martin continued hitting and kicking him. Dorham attempted to stop the beating when Martin hit him in the eye. Mallory managed to get up, then limped across the street into the building. Mallory did not use any abusive language nor did he have anything in his hands.

Defendant followed Mallory inside the building where defendant grabbed Mallory's coat and pulled it over his head. Defendant beat Mallory about his head and face. Defendant grabbed a stick and continued beating Mallory until he lost consciousness. Robinson, who was inside the building, called the police.

Dorham went to the building and looked for Mallory. Defendant came toward Dorham with what appeared to be a broom or mop handle. Defendant and Martin then slammed Dorham against the wall, during which time the police arrived. Dorham later found Mallory, who was bleeding from the eyes.

At approximately 11:50 p.m., Chicago police officer Steven Woods responded to an assignment to investigate a disturbance at 1380 East Hyde Park Boulevard. When he arrived, the officer observed defendant and Martin shoving Dorham against a wall. Officer Woods did not include this observation in his written police report. As the officer approached, defendant was hostile towards him. The officer observed both defendant and Martin with money in their hands. Officer Woods also heard Martin telling defendant to return the money to Dorham.

Officer Woods placed defendant and Martin under arrest. The officer noticed that both defendant and Martin had been drinking. The officer also noticed that defendant had no injuries or marks on his face.

At trial, defendant testified that after the accident in the parking lot with Mallory, he was upset but did not threaten Mallory. Defendant stated that after he and Dorham attempted to drive the two cars to the police station, Dorham pulled Mallory's car to the curb because it had become disabled. According to defendant, he was inspecting the damage when Mallory kicked him in the groin. The two then began fighting. Mallory fell to the ground and defendant was over him. Mallory got up and ran inside the building, and defendant followed because he did not want Mallory to "get anything like a gun or a knife."

Defendant further testified that after he entered the building, Mallory attacked him with a mop handle and the two began to fight. Mallory asked defendant to stop hitting him. Defendant's money then fell from his pocket and he backed away from Mallory. Martin and Dorham subsequently entered the building. Martin was helping defendant pick up his money when the police came in. In response to

Martin's requests that defendant return the money to Mallory, defendant claimed the money belonged to him. Defendant showed the officer a paycheck stub which he cashed the day before. Defendant also stated that he never threw Dorham up against the wall and that Robinson never pulled a knife on him.

Also at trial, the parties stipulated to the testimony of Barry Shack, the owner of a currency exchange, that defendant cashed a $792.44 payroll check on April 17, 1989. After both sides made closing arguments, the judge instructed the jury, which found defendant guilty of aggravated battery as to Mallory. The trial court later sentenced defendant to three years in the Illinois Department of Corrections.

■■ Defendant first contends that the trial court erred by not *sua sponte* including in the jury instruction on self-defense a provision that deadly force could be used to prevent a felony. At the jury instruction conference, the State tendered, *inter alia*, an Illinois Pattern Jury Instruction (IPI) on the use of force in defense of a person. Defendant did not object to the instruction as tendered by the State, nor did he request that the self-defense instruction include a deadly force provision. Defendant also failed to raise any issue concerning the jury instructions in his post-trial motion.

The responsibility of preparing jury instructions rests with the parties and a trial court has no duty to alter instructions tendered by counsel. (*People v. Barnard* (1984), 104 Ill. 2d 218, 232.) Instructional errors are waived on review where a defendant fails to (1) object to allegedly defective jury instructions, (2) offer accurate instructions, and (3) raise the issue in his post-trial motion. (*People v. Shields* (1991), 143 Ill. 2d 435, 446.) Therefore, we hold that defendant has effectively waived this issue on review.

Additionally, we are unpersuaded by defendant's argument that the trial court's omission of the deadly force language from the self-defense instruction was plain error. This narrow exception to the waiver rule is used either to rectify grave errors in instructions, or where the evidence is evenly balanced such that fundamental fairness requires that the jury be properly instructed. (*People v. Solis* (1991), 216 Ill. App. 3d 11, 19.) We find the plain error doctrine inapplicable here, given that no substantial instructional error occurred and that the evidence strongly favors defendant's guilt.

■■ Second, defendant asserts that he was denied a fair trial because the jury instructions broadened the charge against him. Defendant claims that the use of Illinois Pattern Jury Instructions, Criminal, No. 11.09 (2d ed. 1981) (hereinafter IPI Criminal 2d) and IPI Criminal

2d No. 11.10 allowed the jury to convict him of an offense with which he was not charged.

At trial, defendant objected to use of IPI Criminal 2d No. 11.09 and argued that it was inconsistent with the evidence. On appeal, however, defendant now seeks to attack the language of the instruction, claiming it broadened the charge against him. As we noted in *People v. Solis* (1991), 216 Ill. App. 3d 11, 19, "[o]bjections at trial on specific grounds waive all other grounds for objection."

Also, in objecting to the use of IPI Criminal 2d No. 11.10, defendant failed to specify the grounds for his objection. A general objection to a jury instruction, made without specifying the basis therefor, fails to properly preserve the alleged error for review. (*People v. Thomas* (1991), 215 Ill. App. 3d 751, 760.) Moreover, defendant failed to raise the use of the relevant jury instructions in his post-trial motion. Defendant has waived the issue on review. We also find defendant's claim of plain error to be without merit.

■ Lastly, defendant contends that he was not proved guilty of aggravated battery beyond a reasonable doubt. Defendant argues that the evidence at trial was conflicting on important issues of fact, creating a reasonable doubt of his guilt. In support, defendant cites differences between Mallory's preliminary hearing testimony and his trial testimony. Defendant also points to discrepancies in facts as testified to by Mallory and Dorham concerning whether Mallory attempted to reenter his car after defendant first attacked him on the street.

The mere existence of conflicting evidence at trial does not require a reviewing court to reverse a conviction. (*People v. Buchanan* (1991), 211 Ill. App. 3d 305, 315-16.) Rather, issues of witness credibility, the weight given to witness testimony, and the resolution of conflicting evidence are determinations made by the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) A reviewing court will not substitute its judgment for that of the trier of fact with respect to such factual determinations. (*People v. Bryant* (1984), 123 Ill. App. 3d 266, 272.) A reviewing court will reverse a criminal conviction only where the evidence is so improbable that a reasonable doubt as to the defendant's guilt exists. *Collins*, 106 Ill. 2d at 261.

Here, we hold that defendant was proved guilty beyond a reasonable doubt where the credible evidence presented at trial sufficiently supported his guilt. Both Mallory and Dorham testified that defendant threatened and physically attacked Mallory on the street. The evidence of defendant's guilt is further strengthened by the testimony of several witnesses concerning defendant's aggressive behavior. Both Officer Woods and Johnny Robinson testified that defendant was bel-

ligerent. Moreover, defendant admitted he followed Mallory inside the building after Mallory fled from defendant's first attack.

A conviction based on credible evidence will not be disturbed merely because minor conflicts in the evidence were resolved in favor of the State. (*People v. Boone* (1988), 180 Ill. App. 3d 98, 107.) Here, given the credible evidence of defendant's guilt, we are unpersuaded that the conflicts in the evidence cited by defendant raise a reasonable doubt as to his guilt.

For the aforementioned reasons we affirm the judgment of the circuit court.

Affirmed.

JIGANTI, P.J., and CAHILL, J., concur.