NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230398-U

NO. 4-23-0398

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 31, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| ERIK M. DAVIDSON, | ) | No. 22CF59 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*:  (1) The indictment charging defendant with aggravated vehicular hijacking sufficiently informed him of the nature and cause of the charge.
(2) The State proved defendant guilty of aggravated vehicular hijacking beyond a reasonable doubt.
(3) Defendant failed to establish the State used perjured testimony at his trial.
(4) The trial court did not err in finding the appointment of new counsel unnecessary following a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)).
(5) Defendant failed to establish his conviction for unlawful use of a weapon by a felon was unconstitutional.
(6) Defendant's convictions for aggravated battery and unlawful use of a weapon by a felon do not violate the one-act, one-crime rule.

¶ 2   Following a jury trial, defendant, Erik M. Davidson, was convicted of aggravated vehicular hijacking, unlawful use of a weapon by a felon (UUWF), and aggravated battery. The trial court subsequently sentenced him to an aggregate term of imprisonment totaling 44 years.

Defendant appeals his convictions and sentences, arguing—as best as this court can discern considering the significant deficiencies of defendant's appellant's brief—an issue we will discuss in further detail below—the following: (1) the aggravated vehicular hijacking indictment failed to sufficiently inform him of the nature and cause of the charge; (2) the State failed to prove him guilty of aggravated vehicular hijacking beyond a reasonable doubt; (3) the State's knowing use of perjured testimony at trial violated his due process rights; (4) the court erred in finding the appointment of new counsel unnecessary following a *Krankel* inquiry; (5) his conviction for UUWF is unconstitutional; and (6) his convictions for aggravated battery and UUWF violate the one-act, one-crime rule. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In February 2022, a grand jury indicted defendant on one count each of aggravated vehicular hijacking (720 ILCS 5/18-4(a)(6) (West 2020)), UUWF (*id.* § 24-1.1(a)), and aggravated battery (*id.* § 12-3.05(e)(1)). With respect to the aggravated vehicular hijacking count, the indictment charged that defendant

> "took a motor vehicle, a 2021 Mitsubishi Outlander, from the person of Brad
> Denham by threatening the imminent use of force and during the commission of
> said offense, said defendant personally discharged a firearm that proximately
> caused great bodily harm to Brad Denham in that said defendant shot Brad
> Denham."

¶ 5         Defendant's jury trial was conducted on February 15 and 16, 2023. The victim, Brad Denham, testified that on December 21, 2021, he was driving Jaymi McGuirk's vehicle to a house in East Peoria. McGuirk was in the backseat and Brad McCree was in the front passenger seat. When they arrived at the house, McGuirk went inside while Denham and McCree remained

in the vehicle. Shortly after McGuirk went inside, defendant exited the house, approached the driver's door, opened it, and then told Denham to "get out" of the vehicle. When Denham refused to exit the vehicle, defendant hit him in the left ear. After being hit, Denham "yanked [defendant] in the car and tried to get whatever was in his hand and then pretty much tried to do what I can, you know what I'm saying, to beat his ass honestly." Defendant backed up and again told Denham to get out of the vehicle. Denham exited the vehicle and "put [his] hands up and went to go after [defendant]," at which point defendant shot him in the thigh. After being shot, Denham "went to go back after him," but defendant pointed the gun at him and said, "I'll kill you. Just give me the vehicle." Denham ran to the other side of the vehicle, and defendant "got in the vehicle and he took off." Denham testified that defendant was approximately six yards away from him when he discharged the firearm. Denham acknowledged that he had five felony convictions. He further testified he did not receive anything in return for his testimony.

¶ 6        April Hartwell, Denham's mother, testified that Denham called her on December 21, 2021, to tell her that he had been shot. Hartwell drove Denham to a Pekin hospital, where he was subsequently transferred to a Peoria hospital.

¶ 7        Brad McCree testified that upon arriving at the house in East Peoria, McGuirk went inside while he and Denham remained in the vehicle. Shortly afterward, defendant approached the vehicle and told Denham to get out of the vehicle because "he was going to drive." Denham refused to exit the vehicle, so defendant "pulled the gun, put it to his head, and [McCree remembered] briefly after that happened that [Denham] kind of smacked the gun away from his head and they began to kind of get into a little bit of a fist fight or a brawl." McCree testified, "They got into the fight, and all I know is that *** I think [Denham] maybe lost his footing a little bit somewhere along the lines and that's when the gun had went [*sic*] off."

- 3 -

McCree testified that defendant remained in possession of the firearm throughout the physical altercation but that defendant and Denham were within arm's length when the firearm was discharged. McCree acknowledged that he had a 2020 felony conviction for possession of methamphetamine.

¶ 8 Corey Davis testified that he lived at the house in East Peoria where the incident occurred. Davis went to a gas station on the night of December 20, 2021, and saw defendant standing outside. He invited defendant to sleep at his house that night, and defendant accepted the invitation. Davis testified that at one point while they were in the kitchen, defendant was "brandishing" a firearm, "Showing it off, if you will." The next morning, Davis awoke to defendant "screaming and yelling at somebody on the phone [telling them] they better hurry up and get there and pick him up and so forth." Eventually, McGuirk arrived at the house. Davis testified that defendant was very agitated and began yelling at McGuirk for taking so long to pick him up. McGuirk would not tell defendant where the keys to her vehicle were, so he exited the house and approached the vehicle. Davis looked out the window and saw defendant standing approximately five feet from the driver's side of the vehicle with a "gun brandished at the vehicle pointed at the vehicle." Davis then went to the front door and "by the time I made it to my door, opened my door, pop. It went off. That's when he had shot [Denham]." Davis testified that he did not "see the shooting itself, but I was two seconds behind—I mean, by the time I opened my door, I heard the pop. It was pretty obvious what just happened." Davis told defendant to drop the firearm; defendant "dropped it for two seconds, picked it back up, and jumped in the vehicle and sped out of [the] driveway."

¶ 9 Robert Vester, a detective with the East Peoria Police Department, testified that he received a call about a gunshot victim being treated in the emergency room of a Peoria

hospital. Vester went to the emergency room and spoke with Denham. After speaking with Denham, Vester began searching for defendant. Vester obtained an arrest warrant for defendant on December 23, 2021, and, on January 8, 2022, defendant was arrested. Shortly thereafter, Vester interviewed defendant at the Peoria County Sheriff's Office. Vester identified People's exhibit 11 as a video recording of the interview. The exhibit was admitted into evidence and published to the jury. During the interview, defendant initially told Vester that when he told Denham to exit the vehicle, Denham pulled a gun on him. Defendant stated he was able to take the firearm from Denham and a struggle ensued, during which the firearm discharge was "accidental." Defendant subsequently changed his story and stated that he was in possession of the firearm, not Denham, but that Denham had reached for the weapon. Defendant claimed the firearm "accidentally went off" when Denham "was coming at" him.

¶ 10 The parties stipulated, in relevant part, to the testimony of Kelly Cox, a medical doctor and the "Medical Director at UnityPoint Health—Pekin." Cox treated Denham in the emergency room at approximately 4:20 p.m. on December 21, 2021. Cox testified, "Denham had a wound to the left medial thigh and an additional wound to the left posterior thigh mid shaft on the femur." Due to the seriousness of the injury, Denham was "transferred by ambulance to the trauma center at OSF Saint Francis Medical Center in Peoria."

¶ 11 Defendant testified that Denham was the initial aggressor and the one who was in possession of the firearm. Defendant testified that he and Denham were fighting for control of the firearm as Denham was pulling it out of his waistband, and the firearm discharged accidentally. Defendant admitted that he took the vehicle from Denham while Denham was sitting in the driver's seat. Defendant also acknowledged that he watched the video of his

interview with Detective Vester. According to defendant, he lied to Vester when he told him that he was the one initially in possession of the firearm.

¶ 12    Following deliberations, the jury found defendant guilty of all three counts beyond a reasonable doubt.

¶ 13    Defendant filed a motion for a new trial, arguing, in relevant part, that counsel was ineffective for failing to object to Denham's testimony that defendant sold drugs.

¶ 14    On April 5, 2023, the trial court conducted defendant's sentencing hearing. The court began the hearing by addressing defendant's motion for a new trial. The court asked defendant if he would like to discuss any allegations of ineffective assistance of counsel. Defendant informed the court that there were "a couple comments that should have been objected to that I would like to show on the record because it did muddy my name to the jury when it was not objected to when [Denham] was on the stand." Specifically, defendant stated counsel should have objected to Denham's testimony that defendant sold drugs. Counsel stated that he did not object because Denham was a liar, and it would be "bad trial strategy just to object because they're lying because in many trials we would be objecting to every word out of some people's mouths." The court determined that appointing new counsel was unnecessary because the issue related to trial strategy. The court stated that

> "if an attorney objects to something, it draws attention to it, and sometimes there's trial strategy not to object. Sometimes if you object over and over and over again, you tend to distract the jury or distance them from your own client. Once again, that goes to trial strategy how that's handled."

The court also denied defendant's motion for a new trial.

¶ 15        Ultimately, the trial court sentenced defendant to 31 years' imprisonment for aggravated vehicular hijacking, 7 years' imprisonment for UUWF, and 6 years' imprisonment for aggravated battery, with the sentences to run consecutively.

¶ 16        On May 4, 2023, defendant filed a motion to reconsider his sentence. Defendant argued, in relevant part, that his convictions for UUWF and aggravated battery should be vacated because they were lesser-included offenses of aggravated vehicular hijacking. The trial court denied defendant's motion following a hearing.

¶ 17        This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19        Initially, we note the State contends that, under the circumstances, we have the authority to strike defendant's appellant's brief and dismiss the appeal because of his failure to comply with the requirements of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Although we agree defendant has failed to comply with the rules, we decline to impose the sanctions requested by the State for the reasons discussed below.

¶ 20        "The purpose of the rules [of appellate procedure] is to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. "The procedural rules governing the content and format of appellate briefs are not suggestions; they are mandatory. [Citation.] This court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with the applicable rules of appellate procedure." *Draves v. Thomas*, 2023 IL App (5th) 220653, ¶ 16. "The striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations

of procedural rules interfere with or preclude review." (Internal quotation marks omitted.) *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005).

¶ 21 Here, defendant's brief violates most, if not all, of the applicable requirements of Rule 341(h). Specifically, defendant's brief does not include (1) a table of contents with a summary statement, (2) an introductory paragraph, (3) a statement of the issues presented for review, (4) a statement of jurisdiction, (5) a "Statutes Involved" section, (6) a statement of facts, or (7) a coherent argument section with citation of the authorities and pages of the record relied on. See Ill. S. Ct. R. 341(h)(1)-(7) (eff. Oct. 1, 2020). Despite defendant's failure to comply with the requirements of Rule 341, the State has included a statement of facts in its appellee's brief and has attempted to identify and address issues arguably raised in defendant's brief. Given the State's helpful efforts in framing the issues for review, coupled with the severity of the sanction of dismissing a direct appeal of a criminal conviction in its entirety, we will attempt to address those discernable arguments in defendant's brief. See *Powell*, 217 Ill. 2d at 132.

¶ 22 Turing to the merits, it appears defendant has raised the following arguments on appeal: (1) the indictment charging him with aggravated vehicular hijacking failed to sufficiently inform him of the nature and cause of the charge; (2) the State failed to prove him guilty of aggravated vehicular hijacking beyond a reasonable doubt; (3) the State's knowing use of perjured testimony at trial violated his due process rights; (4) the trial court erred in finding the appointment of new counsel unnecessary following a *Krankel* inquiry; (5) his conviction for UUWF is unconstitutional; and (6) his convictions for aggravated battery and UUWF violate the one-act, one-crime rule.

¶ 23 A. Sufficiency of the Indictment

¶ 24    First, defendant argues the "trial court erred in indictment [*sic*] of my aggravated vehicular hijacking charge. In the fact that Jaymi McGuirk is the rightful owner of the car in question." Defendant seemingly contends that the indictment was insufficient because the owner of the vehicle taken, McGuirk, was not named as the victim in the indictment. Although defendant has forfeited this argument both by failing to preserve the issue and by failing to cite any relevant authority in his appellant's brief, we will nonetheless briefly address the sufficiency of the indictment. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 25    "A defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him." *People v. Okoro*, 2022 IL App (1st) 201254, ¶ 30. Section 111-3(a) of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/111-3(a) (West 2022)) sets forth the requirements of a charging instrument as follows:

"(a) A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitely as can be done; and

(5) Stating the name of the accused, if known, and if not known designate the accused by any name or description by which he can be identified with reasonable certainty."

Whether a charging instrument was sufficient is a question of law that we review *de novo*. *People v. Espinoza*, 2015 IL 118218, ¶ 15.

¶ 26 Here, the indictment charging defendant with aggravated vehicular hijacking provided the following:

"The Grand Jury of Tazewell County, Illinois, charges that [defendant], on or about the 21st day of December, 2021 at East Peoria, in the County of Tazewell, State of Illinois, committed the offense of

AGGRAVATED VEHICULAR HIJACKING

In that said defendant took a motor vehicle, a 2021 Mitsubishi Outlander, from the person of Brad Denham by threatening the imminent use of force and during the commission of said offense, said defendant personally discharged a firearm that proximately caused great bodily harm to Brad Denham in that said defendant shot Brad Denham,

in violation of 720 ILCS 5/18-4(a)(6)."

¶ 27 We find the indictment sufficiently informed defendant of the nature and cause of the aggravated vehicular hijacking charge against him. The indictment satisfied each of the requirements prescribed by section 111-3(a) of the Procedure Code. 725 ILCS 5/111-3(a) (West 2022). Specifically, the indictment contained (1) the name of the offense, (2) a citation to the relevant statutory provision, (3) the nature and elements of the charged offense, (4) the date and county of the offense, and (5) the name of the accused. See *id.* Although defendant appears to argue the indictment was insufficient because McGuirk was not identified as the victim, he has failed to cite any authority supporting the proposition that an indictment charging aggravated vehicular hijacking must identify the owner of the vehicle taken as the victim. We therefore decline to address this specific contention as it relates to the sufficiency of the indictment. See

Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Accordingly, we reject defendant's challenge to the sufficiency of the indictment charging him with aggravated vehicular hijacking.

¶ 28                                    B. Sufficiency of the Evidence

¶ 29        Second, defendant argues the State failed to "prove beyond a reasonable doubt aggravated vehicular hijacking [*sic*]." Defendant's argument centers around his repeated assertion that because Jaymi McGuirk was the owner of the vehicle in question and had allegedly given defendant permission to use the vehicle, he could not have committed aggravated vehicular hijacking. Defendant also points to inconsistencies in the testimony of several of the State's witnesses.

¶ 30        "The standard for reviewing a defendant's challenge to the sufficiency of the evidence is well settled. As we have repeatedly stated, it is not the function of this court to retry the defendant." *People v. Digirolamo*, 179 Ill. 2d 24, 43 (1997). "Rather, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Hall*, 194 Ill. 2d 305, 330 (2000). "The mere existence of conflicting evidence at trial does not require a reviewing court to reverse a conviction. [Citation.] Rather, issues of witness credibility, the weight given to witness testimony, and the resolution of conflicting evidence are determinations made by the trier or fact." *People v. Goodar*, 243 Ill. App. 3d 353, 357 (1993); see *People v. Jones*, 2023 IL 127810, ¶ 28 ("A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses."). "Only where the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt will a conviction be set aside." *Hall*, 194 Ill. 2d at 330.

- 11 -

¶ 31 "A person commits vehicular hijacking when he or she knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-3(a) (West 2020). A person commits aggravated vehicular hijacking when, in relevant part, "he or she, during the commission of the [vehicular hijacking], personally discharges a firearm that proximately causes great bodily harm." *Id.* § 18-4(a)(6). Thus, the State had to prove beyond a reasonable doubt that defendant (1) knowingly took a vehicle from another person (2) using force or the threat of force and, (3) in doing so, personally discharged a firearm that proximately caused great bodily harm.

¶ 32 Before analyzing the sufficiency of the evidence, we will address defendant's repeated assertion that because McGuirk, not Denham, was the owner of the vehicle taken and had allegedly given defendant permission to use the vehicle, he could not have been convicted of aggravated vehicular hijacking. Defendant's contention is based on the faulty premise that a person can only commit aggravated vehicular hijacking by taking a vehicle from the person or immediate presence of the owner of the vehicle. However, such an interpretation runs contrary to the plain language of the statute and would lead to absurd results. See *People v. Perry*, 224 Ill. 2d 312, 323 (2007) (stating the surest indicator of legislative intent "is the statutory language itself, given its plain and ordinary meaning"); *People v. Diggins*, 379 Ill. App. 3d 994, 998 (2008) ("[S]tatutes are to be construed in a manner that avoids absurd or unjust results.").

¶ 33 The statute clearly states that a person commits aggravated vehicular hijacking by taking a vehicle from "the person or the immediate presence of *another*." (Emphasis added.) 720 ILCS 5/18-3(a) (West 2022); see *id.* § 2-3 (" 'Another' means a person or persons *** other than the offender."). There is simply no requirement in the statute that the victim must also be the owner of the vehicle taken. Moreover, defendant's interpretation would lead to absurd results.

For example, a person who takes a vehicle by shooting the driver would be guilty of aggravated vehicular hijacking if the driver owned the vehicle, but not if the driver was renting the vehicle or borrowing it from a family member. The statute was "intended to criminalize taking control of a vehicle by force or threat of force, including when the victim remains inside the vehicle." *People v. Reese*, 2017 IL 120011, ¶ 42; see *People v. Pryor*, 372 Ill. App. 3d 422, 437 (2007) (stating the "purpose of the vehicular hijacking statute has more to do with the injury to the victim than the taking of property"). Defendant's interpretation of the aggravated vehicular hijacking statute is at odds with both its plain language and its purpose. We therefore reject defendant's argument.

¶ 34　　Turning to the sufficiency of the evidence, we find that a rational trier of fact could have found the essential elements of aggravated vehicular hijacking beyond a reasonable doubt. Defendant does not dispute that he took the vehicle in question, but he claims a struggle ensued only after Denham pulled a firearm from his waistband, during which the firearm accidentally went off and struck Denham in the leg. However, defendant also admitted in the interview with Vester that he was the one who initially possessed the firearm. Moreover, Davis testified that defendant was in possession of a firearm the night before the shooting and saw defendant pointing the firearm at Denham while standing approximately five feet from the vehicle. Further, both Denham and McCree testified that defendant approached the vehicle with a firearm and demanded Denham exit the vehicle. While defendant claims the testimony of Denham and McCree should not be believed due to their felony convictions and the inconsistencies in their testimony, it is not our function to reweigh the evidence. "The mere existence of conflicting evidence at trial does not require a reviewing court to reverse a conviction. [Citation.] Rather, issues of witness credibility, the weight given to witness

- 13 -

testimony, and the resolution of conflicting evidence are determinations made by the trier or fact." *Goodar*, 243 Ill. App. 3d at 357. We cannot say that the testimony of Davis, Denham, and McCree was "so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Hall*, 194 Ill. 2d at 330. Accordingly, we find the evidence was sufficient to prove defendant guilty of aggravated vehicular hijacking beyond a reasonable doubt.

¶ 35                                            C. Due Process

¶ 36        Third, defendant argues the State violated his due process rights by obtaining his convictions through the knowing use of perjured testimony. Defendant's central contention is that the State promised to dismiss an unrelated aggravated battery charge against Denham in exchange for his promise to provide false testimony at defendant's trial. Defendant also points to inconsistencies in several of the State's witnesses' testimony.

¶ 37        Both our supreme court and the United States Supreme Court "have long recognized that a criminal conviction obtained through the knowing use of false testimony constitutes a violation of due process." *People v. Brown*, 169 Ill. 2d 94, 103 (1995); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Even when the State does not solicit the false testimony, it cannot allow the testimony to "go uncorrected when it appears." *Napue*, 360 U.S. at 269. "When asserting a due process violation, a defendant bears the burden to establish by clear and convincing proof that the State used perjured testimony in the manner proscribed by *Napue*." *People v. Perkins*, 2020 IL App (2d) 170963, ¶ 40. "Where a criminal defendant seeks to overturn his conviction on the basis of perjured testimony, the defendant must not merely allege perjury by [the] State's witnesses, but must present clear, factual allegations of perjury and not mere conclusions or opinions." *People v. Thomas*, 364 Ill. App. 3d 91, 104 (2006).

"[I]nconsistencies in testimony cannot be equated with perjury, nor does it establish or show that the State knowingly used perjured testimony." *People v. Craig*, 334 Ill. App. 3d 426, 439 (2002).

¶ 38 Here, we find defendant has failed to satisfy his burden of proving the State used perjured testimony to obtain his convictions. Defendant contends the State promised to dismiss an unrelated aggravated battery charge against Denham in exchange for his promise to provide false testimony at defendant's trial. However, defendant has failed to point to anything in the record that lends support to his conclusory allegation. See *Thomas*, 364 Ill. App. 3d at 104 (stating that mere conclusions or opinions are insufficient to overturn a conviction on the basis of perjured testimony). Indeed, this issue was addressed at trial, and the State indicated that it dismissed the charge against Denham because video evidence showed that he was not the perpetrator. Moreover, defendant's references to alleged inconsistencies in the State's witnesses' testimony is likewise unavailing, as "inconsistencies in testimony cannot be equated with perjury, nor does it establish or show that the State knowingly used perjured testimony." *Craig*, 334 Ill. App. 3d at 439. Accordingly, we find defendant has failed to establish the State violated his due process rights by using perjured testimony to obtain his convictions.

¶ 39 D. *Krankel*

¶ 40 Fourth, defendant argues the trial court erred in finding the appointment of new counsel unnecessary following a *Krankel* inquiry. Defendant also seemingly raises a freestanding claim that counsel was ineffective for failing to call certain witnesses at trial.

¶ 41 "The common law procedure developed from our decision in *Krankel* is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29 (citing *Krankel*, 102 Ill. 2d at 181). The supreme court has summarized the *Krankel* procedure as follows:

"[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003).

In examining the factual basis of the defendant's claim, "the trial court may inquire with trial counsel about the facts and circumstances surrounding the defendant's allegations" and "may also briefly discuss the allegations with defendant." *Jolly*, 2014 IL 117142, ¶ 30. Additionally, "the trial court is permitted to base its evaluation of the defendant's *pro se* allegations of ineffective assistance of counsel on its knowledge of defense counsel's performance at trial." *Id.* "A court's determination that a defendant's claim does not demonstrate a possible neglect of the case will be reversed where that decision is manifestly erroneous." *People v. Maya*, 2019 IL App (3d) 180275, ¶ 17. A decision is manifestly erroneous "when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98.

¶ 42        Here, in addressing defendant's motion for a new trial, the trial court asked defendant if he would like to address any allegations of ineffective assistance of counsel. Defendant informed the court that there were "a couple comments that should have been objected to that I would like to show on the record because it did muddy my name to the jury when it was not objected to when [Denham] was on the stand." Specifically, defendant stated counsel should have objected to Denham's testimony that defendant sold drugs. Counsel stated that he did not object because Denham was a liar, and it would be "bad trial strategy just to

- 16 -

object because they're lying because in many trials we would be objecting to every word out of some people's mouths." The court ultimately determined that appointing new counsel was unnecessary because the issue related to trial strategy. The court stated that

> "if an attorney objects to something, it draws attention to it, and sometimes there's trial strategy not to object. Sometimes if you object over and over and over again, you tend to distract the jury or distance them from your own client. Once again, that goes to trial strategy how that's handled."

We cannot say it was manifestly erroneous for the court to find that the decision not to object pertained to trial strategy. See, *e.g.*, *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991) (noting that deciding whether to object is a matter of trial strategy). Accordingly, the court did not err in determining that appointing new counsel was unnecessary.

¶ 43        To the extent defendant also raises a freestanding claim that counsel was ineffective for failing to call the doctor that treated Denham's gunshot wound at the Peoria hospital and for failing to call McGuirk, we find his claim meritless. Defendant argues counsel should have called the doctor "to ask if she has ever seen any self[-]inflicted gun shots before." He also contends counsel should have called McGuirk because she would have testified "that either she gave me permission to use her car, or she gave Brad Denham permission." However, not only has defendant failed to provide any evidence demonstrating that the potential witnesses' testimony would have been exculpatory, but he also implicitly acknowledges that he does not know what they would have testified to or whether their testimony would have hurt or helped his case. Defendant's bare allegation that counsel should have called certain witnesses is not enough to establish a claim of ineffective assistance of counsel. See, *e.g.*, *People v. Eggleston*, 363 Ill. App. 3d 220, 228-29 (2006); *People v. Redmond*, 341 Ill. App. 3d 498, 516 (2003).

¶ 44                                 E. UUWF Conviction

¶ 45          Fifth, defendant argues, citing the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2002), that his UUWF conviction is unconstitutional because "there is not a historical tradition in the United States or in Illinois of prohibiting a person who has a prior felony conviction of possessing a firearm." Thus, according to defendant, "it is now unconstitutional for the State of Illinois to prohibit a person from possessing a firearm." We review the constitutionality of a statute *de novo*. *People v. Baker*, 2023 IL App (1st) 220328, ¶ 36.

¶ 46          We find it unnecessary to discuss *Bruen* in detail, as that case simply has no application to defendant's situation because its holding was limited to laws affecting "law-abiding citizens." *Bruen*, 597 U.S. at 71. In fact, the *Bruen* court explicitly stated, " '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.' " *Id.* at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)). Because the UUWF statute defendant challenges on appeal applies only to convicted felons such as himself, and not to "law-abiding citizens," *Bruen* does not apply to the instant case. Thus, we reject defendant's argument that his UUWF conviction is unconstitutional in light of *Bruen*. See, *e.g.*, *Baker*, 2023 IL App (1st) 220328, ¶¶ 33-39 (rejecting the same argument raised by defendant).

¶ 47                              F. One-Act, One-Crime Rule

¶ 48          Lastly, defendant argues his convictions for UUWF and aggravated battery violate the one-act, one-crime rule because they are lesser-included offenses of aggravated vehicular hijacking. "Whether a violation of the rule has occurred is a question of law, which we review *de novo*." *People v. Coats*, 2018 IL 121926, ¶ 12.

- 18 -

¶ 49          In determining whether a violation of the one-act, one-crime rule has occurred, reviewing courts employ the following two-step analysis:

> "First, the court ascertains whether the defendant's conduct consisted of a single physical act or separate acts. [Citation.] If it is determined that the defendant committed multiple acts, the court then moves to the second step and determines whether any of the offenses are lesser-included offenses. [Citation.] If none of the offenses are lesser-included offenses, then multiple convictions are proper." *Id.*

"If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *People v. Miller*, 238 Ill. 2d 161, 166 (2010). "In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Id.*

¶ 50          Here, defendant was convicted of the offenses of aggravated battery, aggravated vehicular hijacking, and UUWF, which are set forth in sections 12-3.05(e)(1), 18-4(a)(6), and 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(e)(1), 18-4(a)(6), 24-1.1(a) (West 2020)), respectively. Under section 18-4(a)(6), a person commits aggravated vehicular hijacking "when he or she knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force" and, "during the commission of the offense, personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person." *Id.* §§ 18-3(a), 18-4(a)(6). "A person is considered to have 'personally discharged a firearm' when he or she, while armed with a firearm, knowingly and intentionally fires a firearm causing the ammunition

- 19 -

projectile to be forcefully expelled from the firearm." *Id.* § 2-15.5. Under section 12-3.05(e)(1), "[a] person commits aggravated battery when, in committing a battery, he or she knowingly *** [d]ischarges a firearm *** and causes any injury to another person." *Id.* § 12-3.05(e)(1). Section 24-1.1(a) provides that "[i]t is unlawful for a person to knowingly possess *** any firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." *Id.* § 24-1.1(a).

¶ 51        As stated above, for an offense to be deemed a lesser-included offense of a second offense, "it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Miller*, 238 Ill. 2d at 166. In other words, under the circumstances, it must have been impossible for defendant to commit aggravated vehicular hijacking without also necessarily committing either aggravated battery or UUWF, or both.

¶ 52        We find that neither aggravated battery nor UUWF are lesser-included offenses of aggravated vehicular hijacking. First, it is possible to commit aggravated vehicular hijacking under section 18-4(a)(6) without necessarily committing aggravated battery under section 12-3.05(e)(1). This is because the latter offense requires knowingly causing bodily harm, while the former requires proximately causing great bodily harm. 720 ILCS 5/12-3.05(e)(1), 18-4(a)(6) (West 2020). It would be possible for a person, in committing a vehicular hijacking, to personally discharge a firearm as a warning shot that inadvertently hits a bystander. Thus, the person would be guilty of aggravated vehicular hijacking but not aggravated battery because they did not knowingly shoot the bystander. Second, it is also possible to commit aggravated vehicular hijacking under section 18-4(a)(6) without necessarily committing UUWF under section 24-1.1(a). An essential element of UUWF is that the person possessing the firearm is a convicted felon. In contrast, a felony conviction is not an essential element of aggravated

vehicular hijacking, meaning a person who has never been convicted of a felony could commit aggravated vehicular hijacking without also necessarily committing UUWF. Accordingly, because neither aggravated battery nor UUWF are lesser-included offenses of aggravated vehicular hijacking, we reject defendant's argument that his convictions violate the one-act, one-crime rule.

¶ 53                              III. CONCLUSION

¶ 54          For the reasons stated, we affirm the trial court's judgment.

¶ 55          Affirmed.